Thomas R. Kreller (CA 161922)
TKreller@milbank.com
Linda Dakin-Grimm (CA 119630)
LDakin-grimm@milbank.com
Andrew B. Lichtenberg (*pro hac vice* application pending)
ALichtenberg@milbank.com
MILBANK LLP
2029 Century Park East, 33rd Fl.
Los Angeles, CA 90067
Telephone:    424-386-4000
Facsimile:    213-892-4704

Andrea Ramos (CA 162531)
aramos@swlaw.edu
Clinical Professor of Law
Director of Immigration Law Clinic
Southwestern Law School
3050 Wilshire Boulevard
Los Angeles, CA 90010
Telephone:    213 738-7922
Facsimile:    213 738-5751

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| A.O., A.S.R., L.C., R.M., and I.Z.M., on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>KENNETH T. CUCCINELLI, Acting Director, U.S. Citizenship and Immigration Services, KEVIN K. MCALEENAN, Acting Secretary, U.S. Department of Homeland Security, ROBERT COWAN, Director, National Benefits Center, U.S. Citizenship and Immigration Services, UNITED STATES DEPARTMENT OF HOMELAND SECURITY, and UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES.<br><br>Defendants. | **CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br>**CLASS ACTION**<br><br>**ADMINISTRATIVE PROCEDURE ACT CASE** |

# INTRODUCTION

1.     This class action seeks to challenge the federal government's unlawful refusal to provide humanitarian relief in the form of Special Immigrant Juvenile Status ("SIJS") to abandoned, abused, or neglected immigrant children between the ages of 18 and 20, who have been declared dependent on the juvenile court under Section 300 of the California Welfare and Institutions Code, such as children in foster care.[1]

2.     Plaintiffs A.O., A.S.R., L.C., R.M., and I.Z.M. ("Plaintiffs"), on behalf of themselves and all other similarly situated individuals (the "Proposed Class"), bring this action to protect children between 18 and 20 years of age in California who are subject to the authority of the juvenile court from the wrongful denial of their SIJS petitions and the lasting harm that follows – including deportation and risk of death.  The government's unlawful refusal to adjudicate SIJS petitions for these children in accordance with 8 U.S.C. § 1101(a)(27)(J) (the "SIJS Statute") and related regulations punishes already traumatized and particularly vulnerable children who, in reliance on the SIJS Statute, brought themselves to the attention of the federal government and petitioned for relief.

3.     This class action and another class action already pending before this Court, captioned *J.L. v. Cuccinelli*, No. 5:18-CV-4914-NC, raise very similar issues.  That case challenges the government's *ultra vires* refusal to provide SIJS to 18-to-20-year-olds in California.  But that class is focused on children dependent on the probate courts and does not include children who were declared dependent on state juvenile courts pursuant to Section 300 of the California Welfare and Institutions Code, such as children in foster care.  These children, including Plaintiffs and the class members they represent, continue to be denied SIJS without legal basis.

4.     Congress created SIJS to protect vulnerable immigrant children by allowing them

---

[1] Throughout the complaint, Plaintiffs refer to themselves and others similarly situated as children in "foster care."  For clarity, when Plaintiffs use the term "foster care" they mean children who were declared dependent on state juvenile courts pursuant to Section 300 of the California Welfare and Institutions Code.  Plaintiffs use the term "foster care" for ease of reference and to distinguish between these plaintiffs and individuals who might be dependent in other ways or declared dependent pursuant to another statute

to remain lawfully in the United States upon proof that one or more of their parents is unwilling or unable to care for them.  The federal SIJS Statute precisely delineates the role of the state courts and that of U.S. Citizenship and Immigration Services ("USCIS") in the SIJS petition process.  Pursuant to the SIJS Statute, the state juvenile courts are responsible for, among other things, placing children in a custodial relationship where they can be cared for and issuing predicate orders with specified findings grounded in state child welfare laws ("SIJ Findings").  Congress recognized that state courts, not USCIS, are best equipped to make these kinds of welfare determinations concerning children, because state courts do so regularly.  After the state court determines that SIJ findings are appropriate, the state court issues SIJ Findings, after which USCIS adjudicates the SIJS petition, which must include the state court SIJ Findings.  *See* 8 U.S.C. § 1101(a)(27)(J); *see also* 8 C.F.R. § 204.11(c)(3)-(6).

5.      To be eligible for SIJS, a child must be (1) under 21 years of age; (2) unmarried; (3) declared dependent on a state juvenile court, or placed in the custody of a state agency or individual appointed by such a court (such as being placed in foster care); (4) the subject of specific findings that reunification with one or both parents is not viable due to abuse, abandonment, neglect, or a similar basis under state law; and (5) the subject of specific findings that it is not in the child's best interest to return to his or her home country (collectively, these are the SIJ Findings).  Once a state court issues SIJ Findings stating that these elements are satisfied, including a reasonable factual basis for its findings, USCIS historically has complied with the law by granting SIJS.

6.      Here, USCIS has acted outside its authority and usurped state authority by denying, or simply refusing to adjudicate, SIJS petitions of children who were between the ages of 18 and 20 when they received SIJ Findings from California juvenile courts.  Rather than adjudicating these SIJS petitions in accordance with the law and granting these children relief, USCIS invented a new requirement for eligibility, resulting in the denial of, or refusal to adjudicate, hundreds of meritorious SIJS petitions and placing the children in jeopardy of deportation.

7.      Specifically, in 2017, USCIS inexplicably began to require that the state court

have jurisdiction to return the applicant children to their *parent's* custody which, USCIS argues, the state courts do not have with respect to children between the ages of 18 and 20.  This new requirement has no basis in the SIJS Statute passed by Congress.  USCIS's improper conduct causes immediate, life-threatening consequences to hundreds of vulnerable children and violates both the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2), and the Due Process Clause of the United States Constitution.

8.    Each Plaintiff was declared dependent on a California juvenile court under Section 300 of the California Welfare and Institutions Code.  Each applied for SIJS before the age of 21, believing that USCIS would accept the SIJ Findings and adjudicate the SIJS petition in accordance with federal law and USCIS's previous practice and guidance.  *See* Volume 6 of the Consolidated Handbook of Adjudication Procedures, attached hereto as Ex. 1 ("Generally, a petition should not be denied based on USCIS' interpretation of state law, but rather officers should defer to the juvenile court's interpretation of the relevant state laws. . . .  [T]he evidence must establish that the juvenile court based its decision, including whether or not it has jurisdiction to issue the order, on state law rather than federal immigration law.").  Due to USCIS's unlawful imposition of an additional requirement for SIJS eligibility, Plaintiffs now risk deportation despite findings by state juvenile courts that returning to their home countries is not in their best interests.

9.    USCIS's *ultra vires* denials of, and refusals to adjudicate, meritorious SIJS petitions is based in part on the faulty assumption that California juvenile courts' jurisdiction ceases at the age of 18.  But, in California, juvenile courts can retain jurisdiction until a child reaches 21.  Section 303(a) of the California Welfare and Institutions Code expressly allows the juvenile court to "retain jurisdiction over any person who is found to be a ward or a dependent child of the juvenile court until the ward or dependent attains 21 years of age."  Historically, USCIS consistently recognized the validity of SIJS orders issued pursuant to Section 303(a) for the purpose of adjudicating SIJS petitions, as the SIJS Statute requires, because in California, a "juvenile court" includes the juvenile, probate, and family divisions of the Superior Court.  Cal. Code Civ. Proc. § 155(a)(1).  Thus, until 2017, USCIS correctly treated California's juvenile

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF

1    courts as courts of competent jurisdiction to make the requisite SIJ Findings.

2         10.    However, as evidenced by USCIS's own statement (discussed below) and by

3    USCIS's SIJS petition denials and Notices of Intent to Deny ("NOIDs"), USCIS has chosen to

4    impose a new *ultra vires* requirement on SIJS petitioners and now routinely unlawfully refuses to

5    accept juvenile courts' findings and jurisdiction over non-minor dependents, depriving Plaintiffs

6    of eligibility for SIJS relief that they otherwise would have received.

7         11.    This turn of events is particularly absurd with respect to 18-to-20-year-olds subject

8    to the jurisdiction of California juvenile courts, because those courts have express authority to

9    order family reunification services for non-minor dependents (upon consent of the non-minor and

10   the parent).  *See* Cal. Welf. & Inst. Code § 361.6 and § 366.31.  Thus, USCIS's invented (and

11   erroneous) requirement that the state court have jurisdiction to reunify children with their parents

12   is met with respect to these children – but still USCIS denies them SIJS.

13        12.    Defendants – who are charged with adjudicating SIJS petitions – issued a

14   statement on April 24, 2018, admitting that they had begun to deny SIJS applications for children

15   who they contend cannot be reunified with their parents by the state court.  This belated

16   admission came after USCIS issued multiple denials or NOIDs in states such as California and

17   New York – states that allow children between the ages of 18 and 21 to obtain custody or

18   dependency orders and the necessary SIJ Findings.  Effectively, Defendants admitted that they are

19   imposing additional requirements for SIJS eligibility that have no basis under federal law,

20   undermine the state court's findings, and impermissibly deny children, including Plaintiffs and

21   those similarly situated, access to the humanitarian protections mandated by Congress.

22        13.    This Court has already considered this *ultra vires* requirement and enjoined

23   Defendants from denying SIJS petitions "on the ground that a California Probate Court does not

24   have jurisdiction or authority to 'reunify' an 18- to 20-year-old immigrant with his or her

25   parents."  *J.L. v. Cissna*, 341 F. Supp. 3d 1048, 1071 (N.D. Cal. 2018) ("USCIS's decision is

26   inconsistent with the plain text of the SIJ statute.").  The same reasoning applies in this case.

27   Moreover, as explained above, California juvenile courts do in fact have the express authority to

28   reunify the Plaintiffs and class members with their parents, which is another reason Plaintiffs and

1    the class should prevail.

2    14.    USCIS's conduct violates the law, irreparably harms hundreds of vulnerable

3    children who would otherwise have been granted SIJS, and deprives these children of the

4    protections they desperately need and deserve.  It is an arbitrary and capricious flouting of both

5    the SIJS Statute and state law.  For countless children like Plaintiffs, a denial of SIJS will block

6    their lawful path to legal permanent residence and citizenship and deprive them of their welfare.

7    Plaintiffs therefore seek equitable and injunctive relief to enjoin this unlawful conduct.  Plaintiffs

8    respectfully request that this Court compel the government to rescind the improper SIJS denials

9    already issued, reopen the SIJS petitions, and enjoin any future denials of SIJS petitions on the

10    basis that the California juvenile courts lack the authority to reunify children with their parents.

11    ## JURISDICTION, VENUE, AND INTRADISTRICT ASSIGNMENT

12    15.    This Court has jurisdiction under 28 U.S.C. § 1331 because this action arises under

13    the Constitution and laws of the United States.  This case arises under the Immigration and

14    Nationality Act ("INA"), 8 U.S.C. §§ 1101 *et seq*., the regulations implementing the INA, and the

15    APA, 5 U.S.C. §§ 701 *et seq*.  The United States has waived its sovereign immunity pursuant to 5

16    U.S.C. § 702.

17    16.    This Court has additional remedial authority under 28 U.S.C. § 1331 (federal

18    question), 28 U.S.C. §§ 2201 *et seq*. (declaratory relief), 5 U.S.C. §§ 701-706 (APA), and Federal

19    Rule of Civil Procedure 65 (injunctive relief).

20    17.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) and

21    (e)(1) because Defendants are officers or employees of the United States, or agencies thereof,

22    acting in their official capacities; because a substantial part of the events or omissions giving rise

23    to the claims occurred in this district; and because A.S.R. and A.O. reside in this district, as do

24    many other putative class members, upon information and belief.

25    18.    Pursuant to Local Rules 3-2(c) and (e), assignment to the Northern District of

26    California, San Jose Division, is appropriate because A.S.R. and A.O. reside in this division and

27    district, and because a substantial part of the events or omissions giving rise to this action

28    occurred in this division.

# PARTIES

## A.    Plaintiffs

19.    A.S.R.[2] is a 21-year-old born in Mexico who was neglected and abandoned by both of her parents and now lives in Santa Clara, California.  A.S.R. received a SIJ Finding order from the Santa Clara Juvenile Court on January 4, 2017, and an updated SIJ Findings order to more clearly articulate the SIJ Findings on October 18, 2018.  A.S.R. submitted an I-360 on March 9, 2017, when she was 18 years old.  USCIS issued a request for evidence on August 24, 2017, to which A.S.R. responded by providing further documentation on November 17, 2017.  USCIS issued an NOID on September 20, 2018, based on USCIS's new and unlawful requirement.

20.    A.O. is a 20-year-old born in Morocco and is a French national by effect of his father's naturalization decree dated June 25, 2002.  A.O. was abused by his parents and has been completely abandoned by his parents since 2016.  A.O. is now a high school graduate, who lives in foster care in San Jose, California.  A.O. received a SIJ Findings order from the San Francisco Dependency Court on April 28, 2017, and an updated SIJ Findings order on December 1, 2017.  A.O. submitted an I-360 petition for SIJS to USCIS on February 2, 2018, when he was 18 years old, and expected that it would be approved within 180 days, which is the time limit for adjudication under the SIJS statute.  *See* 8 U.S.C. § 1232(d)(2).  However, USCIS has failed to adjudicate A.O.'s application for more than nineteen months – *i.e.*, the time limit for adjudication of his petition has run more than three times.

21.    L.C. is a 21-year-old born in Mexico who lives in Lynwood, California.  L.C. submitted an I-360 on November 3, 2016, when she was 18 years old.  USCIS issued requests for evidence on January 17, 2017, September 8, 2017, and June 19, 2018, to which L.C. responded by providing further documentation on January 30, 2017, November 27, 2017, and July 3, 2018 respectively.  USCIS issued an NOID on July 25, 2018, to which L.C. responded on August 13,

---

[2] Plaintiffs need to proceed anonymously in order to protect highly sensitive and personal information, including their immigration status and that of their family members.  Plaintiffs are described in the Complaint using their initials.  Plaintiffs will file a Notice of Motion and Motion for Leave to Proceed Using Pseudonyms.

2018.  On September 12, 2018, USCIS issued a denial, citing the *ultra vires* requirement discussed above.

22.    R.M. is 21-year-old born in Mexico who was abused and neglected by his parents, and lives in San Bernardino, California.  R.M. submitted an I-360 on December 8, 2016, when he was 18 years old.  USCIS issued an NOID on June 28, 2018, to which R.M. responded on July 23, 2018.  USCIS issued a denial on August 16, 2018, citing the *ultra vires* requirement discussed above.

23.    I.Z.M. is a 21-year-old born in Guatemala who lives in Los Angeles, California.  I.Z.M. submitted an I-360 on January 13, 2017, when she was 18 years old.  USCIS issued requests for evidence on June 29, 2017 and August 21, 2017, to which I.Z.M. responded by providing further documentation on August 15, 2017, November 28, 2017, and June 19, 2018.  USCIS issued an NOID on August 9, 2018, to which I.Z.M. responded on August 28, 2018.  USCIS issued a denial on September 27, 2018, citing the *ultra vires* requirement discussed above.

**B.    Defendants**

24.    Defendants Kenneth T. Cuccinelli, Acting Director, USCIS; Kevin K. McAleenan, Acting Secretary, Department of Homeland Security ("DHS"); and Robert M. Cowan, Director, USCIS National Benefits Center, are sued in their official capacity and charged by law with the statutory and regulatory obligation to determine eligibility for SIJS, pursuant to INA §§ 101(a)(27)(J), 103, and 245(h); 8 U.S.C. §§ 1101, 1103, and 1255; and 8 C.F.R. § 204.11.

25.    Defendant Kenneth T. Cuccinelli is the Acting Director of USCIS, an "agency" within the meaning of the APA, 5 U.S.C. § 551(1).  In this capacity, he oversees the adjudication of immigration benefits and establishes and implements governing policies.  6 U.S.C. § 271(a)(3), (b).  He has ultimate responsibility for the adjudication of SIJS applications under the immigration laws, including the SIJS petitions submitted by Plaintiffs.  Defendant Cuccinelli is sued in his official capacity.

26.    Defendant Kevin K. McAleenan is the Acting Secretary of the DHS, an "agency" within the meaning of the APA, 5 U.S.C. § 551(1).  In this capacity, he is responsible for the administration of the INA and for overseeing, directing, and supervising all DHS component

agencies, including USCIS.  Defendant McAleenan supervises Defendant Cuccinelli.  Defendant McAleenan is sued in his official capacity.

27.    Defendant Robert M. Cowan is the Director of the USCIS National Benefits Center, which directly adjudicates SIJS applications and which issued the Proposed Class members' SIJS denials.  Defendant Cowan is sued in his official capacity.

28.    Defendant DHS is an executive agency of the United States and an "agency" within the meaning of the APA, 5 U.S.C. § 551(1).  It is the department within which Defendant USCIS adjudicates SIJS petitions.  USCIS reviews the petitions and the Secretary of Homeland Security determines whether to grant the petitions.  8 U.S.C. § 1101(a)(27)(J)(iii).  DHS and USCIS operate within this district, with headquarters in Washington, D.C.

## BACKGROUND

I.    **THE SIJS STATUTE GRANTS HUMANITARIAN RELIEF TO VULNERABLE IMMIGRANT CHILDREN UNDER THE AGE OF 21 WHO HAVE BEEN PLACED IN THE CUSTODY OF A JUVENILE COURT**

A.    **The History and Expansion of the SIJS Statute**

29.    In 1990, Congress created Special Immigrant Juvenile Status to protect abused, abandoned, and neglected immigrant children in foster care and to provide them a pathway to permanent residence.  Immigration Act of 1990, Pub. L. No. 101-649 § 153, 104 Stat. 4978 (1990).  The statute originally defined a special immigrant juvenile as:

> an immigrant (i) who has been declared a dependent on a juvenile court located in the United States and has been deemed eligible by that court for long-term foster care, and (ii) for whom it has been determined in administrative or judicial proceedings that it would not be in the alien's best interest to be returned to the alien's or parent's previous country of nationality or country of last habitual residence …

*Id.*

30.    In 1993, the Immigration and Naturalization Service ("INS") adopted implementing regulations defining "juvenile court" as "a court located in the United States having jurisdiction under state law to make judicial determinations about the custody and care of juveniles."  8 C.F.R. § 101.6(a) (1993).  Whether an immigrant qualified as a juvenile depended on "the law of the state in which the juvenile court upon which the alien has been declared

1   dependent is located[.]"  8 C.F.R. § 101.6(c)(1) (1993).

2       31.    In the decades since its enactment, Congress has twice expanded the SIJS Statute's

3   reach.  In 1994, Congress expanded the definition to include individuals placed under the

4   "custody" of the state.  Immigration and Nationality Technical Corrections Act of 1994, Pub. L.

5   No. 103-416, § 219, 108 Stat. 4305, 4316 (1994).  This amendment greatly increased the class of

6   children eligible under the statute because children placed in the custody of the state include not

7   only children in foster care, but also, for example, children placed in juvenile detention centers or

8   other custodial arrangements.  Further, the amendment expanded the types of proceedings

9   through which SIJS orders were now available for vulnerable immigrant children.  At that time,

10  the statute did not specify the relevant age, but it was interpreted by INS (the predecessor agency

11  to USCIS) to apply to any individual under the age of 21 who otherwise met the SIJS criteria, to

12  conform to the INA's definition of a "child."[3]  *See* Special Immigrant Status, 58 Fed. Reg. 42843,

13  42850 (August 12, 1993) (codified at 8 C.F.R. 204.11).

14      32.    In 2008, Congress once again significantly expanded SIJS eligibility.  The

15  Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA") was passed with broad

16  bipartisan support and removed the requirement that the child be deemed eligible for long-term

17  foster care, replacing it with the looser requirement that a state juvenile court find that

18  "reunification with 1 or both of the immigrant's parents is not viable due to abuse, neglect, or

19  abandonment, or a similar basis under State law."  Pub. L. No. 110-457, § 235, 122 Sat. 5044,

20  5080 (2008).[4]  In addition, consistent with the INA's definition of a "child," the amendments

21  under the TVPRA provided age-out protections so that the SIJS classification would not be

22  denied to anyone on the basis of age so long as the child was under 21 at the time of filing the

23  SIJS petition (even if he or she turned 21 while the SIJS petition was pending).  *Id.*

24      33.    By both eliminating the requirement that a child must be found eligible for long-

25  _____

26  [3] "Child" is defined by the INA and California law as a person under 21 years of age.  *See* 8
    U.S.C. § 1101(b)(1) (defining a child, in part, as an unmarried individual under the age of 21);
27  Probate Code § 1510(a)-(d) (defining a "child" to include juveniles at the ages of 18-20).  *See
    also* 8 C.F.R. 204.11(c) (defining juvenile as an individual unmarried and under 21 years of age).

28  [4] The regulations have not been updated to reflect this change.  *See* 8 C.F.R. § 204.11.

term foster care in order to receive SIJS and creating age-out protections, Congress confirmed that SIJ Findings can be made in a wide range of state court proceedings, such as guardianship proceedings, and that children may apply for SIJS up to age 21.

34.     Under the current SIJS Statute, petitioners must be (i) under 21 years of age; (ii) unmarried; (iii) declared dependent on a state juvenile court,[5] or placed in the custody of a state agency or individual appointed by such a court (such as being placed in foster care); (iv) the subject of specific findings that reunification with one or both parents is not viable due to abuse, abandonment, neglect, or a similar basis under state law, and (v) that it is not in the child's best interest to return to his or her home country.  *See* 8 U.S.C. §§ 1101(b)(1), 1101(a)(27)(J), and 1232(d)(6).[6]  The SIJS Statute gives USCIS oversight power, requiring it to "consent" to the grant of SIJS.  But, according to USCIS's policy manual, the purpose of this consent is to verify whether the SIJ petition "is bona fide, which means that the juvenile court order was sought to obtain relief from abuse neglect, abandonment, or a similar basis under state law, and not primarily or solely to obtain an immigration benefit."  USCIS Policy Manual, Volume 6, Part J, Chapter 2(D)(5).

## B.     The History of USCIS Deference to State Courts

35.     Congress reserved a critical role for state courts in the SIJS framework because state courts, not USCIS, are the experts on making child welfare determinations, including whether a child has been abused, abandoned, or neglected and what is in his or her best interest. 8 U.S.C. § 1101(a)(27)(J)(i)-(ii).  The SIJS Statute accordingly explicitly reserves for the applicable state court any determination about the child's welfare, custody, and best interest.  *Id*. (requiring state juvenile courts to make certain child welfare determinations); *see also* 8 C.F.R. § 204.11(c)(3)-(6) (same).

36.     In adjudicating the SIJS petition, USCIS must defer to the state court's findings.

---

[5] "Juvenile court" as used in the federal SIJS statute is defined as "a court located in the United States having jurisdiction *under state law* to make judicial determinations about the custody and care of juveniles." 8 C.F.R. § 204.11(a) (emphasis added).

[6] SIJS applicants are excused from certain grounds of inadmissibility including entry to the United States without admission or parole. *See* 8 U.S.C. § 1255(h).

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

USCIS is not authorized to second-guess a state court's decision that it has jurisdiction to make findings under *state law* or the court's application of state law.  USCIS Policy Manual, vol. 6, pt. J, ch. 2(D)(4), attached hereto as Ex. 2 ("There is nothing in USCIS guidance that should be construed as instructing juvenile courts on *how to apply their own state law*.") (emphasis added).

37.    Through its own policies and regulations, USCIS itself has continually reaffirmed the statute's requirement that it give broad deference to state courts' determinations of their own jurisdiction and power to issue the findings laid out in the SIJS Statute.  *See* 58 Fed. Reg. at 42848; Interoffice Memorandum from Michael Aytes, U.S. Citizenship & Immigration Servs., AFM Update: Chapter 22: Employment-based Petitions (AD03-01), at 82 (Sept. 12, 2006) (the "Aytes Memo"), attached hereto as Ex. 3 ("a juvenile court . . . could include any court whose jurisdiction includes determinations as to juvenile dependency").  USCIS also has reaffirmed that it is not permitted to conduct its own analysis of the SIJ Findings issued by the state court.  *See* Aytes Memo at 82 ("The task of the adjudicator is not to determine whether the [SIJ Finding] was properly issued.").  USCIS relies on the expertise of the juvenile courts in making these determinations, never reweighing the evidence to independently determine whether the child was subjected to abuse, neglect, abandonment, or a similar basis under state law.

38.    Consistent with Congress's intent that USCIS rely on the state court's expertise in juvenile welfare matters, the TVPRA simplified the requirement that DHS consent to the SIJS classification, and DHS has interpreted this function to require deference to the state court's findings.  USCIS Policy Manual, vol. 6, pt. J, ch. 2(D).  Recognizing the statute's mandate to defer to state court determinations as to child welfare, "USCIS generally consents to the grant of SIJ classification when the order includes or is supplemented by a reasonable factual basis for all of the required findings."  *Id.*[7]

---

[7] USCIS utilizes the consent function only to review the juvenile court order solely to determine that the SIJ request is "bona fide," i.e., that it is "sought to obtain relief from abuse, neglect, abandonment, or a similar basis under law."  *See* USCIS Policy Manual, vol. 6, pt. J, ch. 2(D)(5). In order to make this determination, "USCIS requires that the juvenile court order or other supporting evidence contain or provide a reasonable factual basis for each of the findings necessary for classification as a SIJ."  *Id.*  Whether the state courts that issued Plaintiffs' or the class members' SIJ Findings had a "reasonable factual basis" is not at issue here.

C.    **The Relevant California Legal Framework**

39.    In California, "dependency" is the process where decisions are made about the care and custody of a child who has come into the child welfare system.

40.    Under the California Welfare and Institutions Code, the juvenile court makes a factual determination about whether a child has been abused, neglected, or abandoned. Cal. Welf. & Inst. Code § 300. If such a determination is made, the court may adjudge that child to be a dependent child of the juvenile court. *Id.*

41.    The juvenile court may remove a minor from the custody of his or her parents to safeguard the child's welfare. Cal. Welf. & Inst. Code § 202(a). When a child is removed from the custody of his or her parents, the purpose of the dependency system is "to secure for the minor custody, care, and discipline." *Id.*

42.    If the juvenile court determines that the child cannot safely return to his or her parents, the court terminates family reunification services and orders a permanent plan for the child. Cal. Welf. & Inst. Code § 266.22(a).

43.    The juvenile court "may retain jurisdiction over any person who is found to be a ward or a dependent child of the juvenile court until the ward or dependent child attains 21 years of age." Cal. Welf. & Inst. Code § 303(a) and (e).

D.    **The Juvenile Division of the California Superior Court Has Jurisdiction to Issue SIJ Findings for Children over 18 Years of Age**

44.    In amending the SIJS Statute in 1994 and 2008, Congress expanded the types of courts that can make a qualifying custody order and can issue SIJ Findings. TVPRA of 2008, Pub. L. No. 110-457, § 235(d). SIJ Findings can be made in a wide range of courts across states. By expanding SIJS eligibility to include not only children eligible for long-term foster care, but also children "legally committed to" or "placed in the custody of" individuals and entities, the TVPRA made clear that Congress intended that USCIS recognize SIJ Findings issued by any state court that had the power to place a child in any custodial relationship. *See* 8 U.S.C. § 1101(a)(27)(J)(i); USCIS Policy Manual, vol. 6, pt. J, ch. 3(A)(1), attached hereto as Ex. 4.

45.    "Juvenile court" as used in the federal SIJS Statute is "a court located in the United

States having jurisdiction under state law to make judicial determinations about the custody and care of juveniles." 8 C.F.R. § 204.11(a). In California, a "juvenile court" includes the juvenile, probate, and family divisions of the Superior Court. Cal. Civ. Proc. Code § 155(a)(1). California law is explicit that the juvenile court has jurisdiction to make determinations regarding the custody and care of juveniles. *Id.* California courts have long recognized that the Juvenile Court has the authority to make SIJ Findings. The California legislature adopted Code of Civil Procedure Section 155 in 2014, confirming that any division of the Superior Court presented with a case involving child welfare (including, but not limited to, juvenile, probate, and family law divisions of the Superior Court) is a juvenile court and may make SIJ Findings. *See* Cal. Civ. Proc. Code § 155(a).

### E. <u>The Juvenile Division of the California Superior Court Can Reunify Plaintiffs with Their Parents</u>

46.     Even if USCIS's new *ultra vires* requirement were permissible (which it is not), USCIS would not have grounds to deny SIJS to Plaintiffs and the Proposed Class pursuant to that requirement. A California juvenile court can order family reunification services for a non-minor dependent if it determines that that it is in the best interest of the non-minor dependent, the non-minor dependent and parent are in agreement, and there is a substantial probability that the non-minor dependent will be able to safely reside with his or her parents. Cal. Welf. & Inst. Code § 361.6 and § 366.31.

### II.  <u>USCIS HAS IMPERMISSIBLY DENIED SIJS PETITIONS BASED ON THE IMPOSITION OF REQUIREMENTS THAT ARE CONTRARY TO FEDERAL LAW</u>

### A. <u>USCIS'S Unlawful Imposition of New SIJS Eligibility Requirements and Its Life-Altering Impact on SIJS Petitioners Ages 18 to 20</u>

47.     As detailed above, USCIS routinely approved SIJS petitions for children ages 18 to 20 who were declared dependent on state juvenile courts under Section 300 of the California Welfare and Institutions Code. Upon information and belief, prior to 2017, USCIS had also not denied a *single* SIJS petition from a petitioner between ages 18 and 20 on the basis that a juvenile court of any state lacked authority to reunify the child with his or her parent.

48.     In the summer of 2017, USCIS drastically changed its SIJS adjudication policies. Instead of adjudicating SIJS petitions filed by children who obtained SIJS predicate orders after turning 18, USCIS began to ignore them, leaving vulnerable children in limbo.[8]  USCIS must adjudicate SIJS petitions within 180 days.  8 U.S.C. § 1232(d)(2).

49.     In February 2018, USCIS's legal counsel purportedly issued "new guidance" to USCIS, which was never published on USCIS's website and was not provided to the media until months later, stating that the SIJS Statute requires that a state court have the authority to return a child to the custody of his or her parent in order for that court to find that reunification is not viable.  *See* Ted Hesson, *USCIS Explains Juvenile Visa Denials*, POLITICO (Apr. 25, 2018) and April 24, 2018, statement from USCIS spokesperson Jonathan Withington to Politico appended thereto (the "Withington Statement"), attached hereto as Ex. 5.

50.     After this new non-public "guidance" issued in February 2018, USCIS began to issue denials to these children in New York and Texas, conveying its newly concocted position that the state court that issued SIJ Findings – such as the New York Family Court, a state court with jurisdiction over "abuse and neglect proceedings," among other matters related to the care and custody of minors, N.Y. Fam. Ct. Act § 115 – was not a "juvenile court" under the SIJS statute when it issued guardianship orders for children ages 18 to 20.

51.     In or about March 2018, USCIS started imposing this new requirement (which again, had not yet been made public) in California by issuing NOIDs and denials to petitions filed for children under 21 who remained dependent on a juvenile court.  USCIS issued a NOID to L.C. on July 25, 2018.  The NOID stated that, "[b]ecause you had already reached the age of majority in the state of California when the court placed you in a consensual legal guardianship, there is no evidence that the state court had jurisdiction under California state law to make a legal conclusion about returning you to your mother's custody."  USCIS then issued a denial on September 12, 2018, stating that "[w]hile you have presented evidence that a court has found you dependent on the court, the evidence you submitted does not establish that the state court had

---

[8] USCIS has not timely adjudicated Plaintiffs' SIJS petitions.  For example, A.O.'s application, submitted on February 2, 2018, remains pending.

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF

jurisdiction under state law to make a legal conclusion about returning you to your parent(s)' custody."

52.     Soon after the first denial in the state of California on this novel basis, the New York Times contacted USCIS to investigate a purported change in how USCIS adjudicates SIJS applications of children who applied after their 18th birthdays.  Withington initially denied that any change had occurred.  *See* Liz Robbins, *A Rule Is Changed for Young Immigrants, and Green Card Hopes Fade*, N.Y. TIMES (Apr. 18, 2018), attached hereto as Ex. 6 (quoting Withington's statement that "USCIS has not issued any new guidance or policy directives regarding the adjudication of SIJS petitions.  We remain committed to adjudicating each petition individually based on the merits of the case and safeguarding the integrity of our lawful immigration system.").

53.     Yet on April 24, 2018, USCIS reversed course and Withington issued a statement to a single media outlet, which has never been posted to USCIS's website or otherwise made publicly available, explaining an entirely different position for the denials and the reasoning behind future denials.  *See* Ex. 5.  In a reversal of his previous statements, Withington explained that USCIS decided to centralize adjudication of SIJ cases to the National Benefits Center and asked its Office of the Chief Counsel for legal guidance in late summer 2017 on pending cases filed by individuals over age 18.  *Id.*  Withington then noted that for the purposes of establishing eligibility for SIJS, USCIS had imposed a new requirement that a state court have the authority to return of a child to the custody of his or her parent in order for that court to find that reunification is not viable.  *Id.*  He concluded, "Since most courts cannot place a child back in the custody of their parent once the child reaches the age of majority . . . , those state courts do not have power and authority to make the reunification finding for purposes of SIJ eligibility."  *Id.*

54.     In the NOIDs and denials it has issued to Plaintiffs and children like them, USCIS has made clear how it applies this new requirement to California:  In USCIS's view, the Juvenile Court has no jurisdiction to make SIJ Findings once a minor dependent reaches age 18.[9]  USCIS

---

[9] For instance, on September 12, 2018, USCIS issued a denial to Plaintiff L.C. on this basis.

COMPLAINT FOR DECLARATORY AND
                                                                        INJUNCTIVE RELIEF

1    bases these denials on the *ultra vires* and improper imposition of a new requirement that juvenile

2    courts must be able to order reunification of children with their parents to issue SIJ findings, and

3    on the erroneous application of that unlawful requirement by which USCIS incorrectly assumes

4    that California juvenile courts lacks the authority to reunite non-minors with their parents.

5    USCIS thus has signaled its intent to deny the SIJS petitions of all children who obtained SIJS

6    Findings on or after their eighteenth birthdays who, like Plaintiffs, were declared dependent on a

7    California juvenile court.

        **B.**     **<u>USCIS Has Unlawfully Denied SIJS Applications for Children Who Remain Dependent on a Juvenile Court</u>**

                1.     <u>USCIS's Conclusion that the Juvenile Court Must Have the Ability to Reunify the Petitioners with Their Parents Is Contrary to the Requirements in the Federal Law</u>

12        55.     Defendants' denial or intent to deny SIJS to Plaintiffs, or failure to adjudicate

13    Plaintiffs' SIJS applications, on the grounds that the state court lacks authority to reunify

14    Plaintiffs with their parents violates the SIJS Statute because it imposes an extra-statutory

15    eligibility requirement on SIJS petitions that does not exist anywhere in the law.  Defendants'

16    actions are arbitrary, capricious, and contrary to the plain text of the statutes, regulations, and

17    agency guidance.

18        56.     USCIS's own Policy Manual makes no such suggestion that state juvenile courts

19    must have the legal authority to reunify children with their parents in order to find that

20    reunification is not viable.  Additionally, Section 101(a)(27)(J)(i) of the INA contains no such

21    requirement, providing only that the state court determine that "reunification with 1 or both of the

22    immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found

23    under State law."  INA § 101(a)(27)(J)(i).  Not even the outdated SIJS Regulation suggests that a

24    "juvenile court" must have such authority; indeed, the definition of a "juvenile court" makes no

25    reference whatsoever to reunifying petitioners with their parents. *See generally* 8 C.F.R. §

26    204.11(a).  Simply nothing in the SIJS Statute indicates that a juvenile court must possess

27    authority to order SIJS petitioners back into the control or custody of their parents.

28

       COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

2.    <u>USCIS's Conclusion That the State Court Must Have the Ability to Reunify the Petitioners with Their Parents Is Not A Permissible Construction of Any Federal Law</u>

57.    Defendants' unilateral and unsupported imposition of this additional legal requirement also directly contravenes Congress's expansion of SIJS eligibility beyond foster-care youth.  Allowing USCIS to implement this requirement would nullify TVPRA of 2008 and the 1994 amendments to the statute.

58.    In each of the denials or NOIDs, USCIS has relied on 8 CFR § 204.11 to argue that a juvenile court can make SIJ Findings only if it has the authority to reunify petitioners with their natural parents.  But those regulations were issued before the TVPRA, were never updated, and do not conform to the current law.  The definition of a youth eligible for long-term foster care under that regulation is *no longer relevant* to SIJS eligibility because the TVPRA eliminated the requirement that a youth be found eligible for long-term foster care.  Pub. L. No. 110-457, § 235(d).

59.    In addition to reliance on an outdated regulation, the agency's denials are inconsistent with the plain language of the statute regarding age limits.  As noted above, the TVPRA provided age-out protections so that the SIJS classification would not be denied to anyone on the basis of age so long as they are under 21 years old on the date they file a SIJS petition (even if they turn 21 while the petition is pending).  *Id*.  Through this change, Congress reaffirmed and signaled its clear intent for children to access SIJS until the age of 21.  (By contrast, USCIS spokesman Withington acknowledged that USCIS's new (unlawful) requirement would prevent most children 18 and older from receiving SIJS.)

60.    Accordingly, USCIS's recent NOIDs and denials with respect to petitions filed by non-minor dependents ignore the TVPRA of 2008 by denying SIJS to children based on their age at the time the SIJS Findings were made.  Similarly, construing the SIJS statute to preclude 18-to-20-year-olds is not a permissible construction of the statute because it is contrary to the plain language of the INA, which includes people who have not yet reached their 21st birthday as "children" and thus eligible for SIJS.

3.   <u>USCIS Fails to Defer to State Courts' Child Welfare Determinations as Required Under Federal Law</u>

61.     In denying SIJS to Plaintiffs, USCIS fails to defer to the state court's findings as mandated by the SIJS Statute.  As discussed in Section I.B above, Congress vested in the state courts the power to make SIJ Findings.  The SIJS Statute specifically reserves for state courts the ability to make the required custody, dependency, or legal commitment determination; to find that the child cannot reunify with one or both parents due to abuse, abandonment, neglect, or similar basis under state law; and to make the best-interest determination.  *See* 8 U.S.C. § 1101(a)(27)(J).  USCIS must defer to the state court's expertise in child welfare matters and to the state court's interpretations of its own laws when the state court makes SIJ Findings.  *See* USCIS Policy Manual, vol. 6, pt. J, ch. 3(A)(2) ("There is nothing in USCIS guidance that should be construed as instructing juvenile courts on *how to apply their own state law*.") (emphasis added).

62.     However, Defendants refuse to defer to the state court and have impermissibly disregarded the state court's exercise of jurisdiction over Plaintiffs and other children like them, as well as the state court's findings that reunification is not viable under California law.  *Cf.* California Civil Procedure § 155 ("A superior court has jurisdiction under California law to make judicial determinations regarding the custody and care of children within the meaning of the federal Immigration and Nationality Act (8 U.S.C. Sec. 1101(a)(27)(J) and 8 C.F.R. Sec. 204.11), which includes, but is not limited to, the juvenile, probate, and family court divisions of the superior court. These courts may make the findings necessary to enable a child to petition the United States Citizenship and Immigration Service for classification as a special immigrant juvenile pursuant to Section 1101(a)(27)(J) of Title 8 of the United States Code.").

63.     Defendants also refuse to recognize California law allowing the juvenile court to retain jurisdiction over a child age 18-20 who is found to be a ward or a dependent of the juvenile court.  *See* Cal. Welf. & Inst. Code § 303(a) and 303(e).

64.     Moreover, even if USCIS's *ultra vires* requirement were permissible, it would not be grounds to deny SIJS to Plaintiffs and the Proposed Class.  California juvenile courts have the authority order family reunification services for Plaintiffs and the Proposed Class, as discussed

above.  *See* Cal. Welf. & Inst. Code § 361.6 and § 366.31.

C.    **USCIS Has Improperly Issued NOIDS and Denials to the Named Plaintiffs and Putative Class Members in This Case**

65.    In this case, the Juvenile Court has found that the named Plaintiffs' and the putative class members' reunification with their parents would not be viable due to abandonment, abuse, neglect, or a similar basis under California law; however, Defendants refuse to recognize these findings based on their newly established and erroneously applied unlawful requirement that the court be able to reunify Plaintiffs with their parents at the moment it makes the SIJ Findings.  As a direct consequence of Defendants' actions, the SIJS applications of Plaintiffs and the Proposed Class, who otherwise qualify for SIJS, have been or will be improperly denied.

## SEVERE HARM TO PLAINTIFFS

66.    USCIS's arbitrary imposition of a new SIJS requirement and unlawful refusal to defer to state court SIJ Findings dooms Plaintiffs' meritorious SIJS applications, jeopardizing the stability Plaintiffs have been striving for and rendering them vulnerable to removal proceedings and deportations from the United States – a result that a state court judge *already* determined to be against their best interests.

67.    A.O. was born in Meknes, Morocco, and is a French national by effect of his father's naturalization decree dated June 24, 2002.  He lived with his mother until he was 16 years old.  His father and his mother physically abused each other in his presence, and the violence lasted throughout A.O.'s childhood, including an occasion when his father tried to flush his mother's head in the toilet.  After his parents eventually separated around 2013, A.O.'s mother began to physically abuse A.O. by hitting him, because she said he looked like his father.  A.O.'s father has a substance abuse problem and served three years in prison for selling drugs.  Around April 2016, when A.O. was 16 years old, his mother kicked A.O. out of the family home because she believed he was old enough to support himself.  A.O. tried to return home, but his mother refused to have him.  He has not been in contact with either parent since 2016 and receives no financial, emotional or other support from them.  A.O. came to the United States on October 26th,

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

2016 and has not left since.  In foster care, A.O. graduated from high school.  He plays and coaches soccer locally and was honored in the local newspaper for his dedication to the community.

68.     A.S.R. was born in Mexico but has resided in California since she was an infant. A.S.R. was sexually abused by her mother's boyfriend and a dependency case was initiated in 2009 for the mother's failure to protect her daughter.  Subsequently, A.S.R.'s mother neglected and abandoned A.S.R. when she was approximately twelve years old by failing to visit or provide financial and emotional support.  A.S.R.'s father neglected and abandoned her; he refused to care for his daughter.  All of A.S.R.'s friends and family reside in the United States and she has had no contact with relatives in Mexico.

69.     The San Bernardino Children and Family Services Department (CFS) removed R.M. from his parents' care and custody on January 23, 2015 when he was 16 years old.  R.M.'s father had a substance abuse problem, criminal history and was not able to care for him, and his mother was living in Mexico and had not been caring for him.  R.M. has lived in the United States since he was two years old.  R.M. has obtained all of his schooling in California and plans to attend college.

70.     I.Z.M. was declared a dependent of the juvenile court and the California state court found that reunification with her father was not viable because the whereabouts of her father was unknown.  The court found that it was not in I.Z.M.'s best interest to be returned to her home country, Guatemala, because she had no suitable parent or person willing and/or able to care for her there.

71.     L.C. was declared a dependent of the juvenile court and the California state court found that reunification with her father was not viable.  The court found that it was not in L.C.'s best interest to be returned to her home country, Mexico.  She graduated from high school and is attending a four-year university.

72.     California juvenile courts have determined that all of the Plaintiffs were abandoned, abused, or neglected by one or both of their parents and that it in their best interests to stay in the United States.  The same determinations have been or will be made with respect to

each member of the Proposed Class.  Yet, USCIS's seeks to remove these vulnerable children

them to countries where nothing is waiting for them.  USCIS's June 28, 2018, policy

memorandum provides that, upon denial of Plaintiffs' and other members of the Proposed Class's

SIJS petitions, USCIS *will* place these children into removal proceedings if they do not have other

lawful status in the United States.  *See* Office of the Director, U.S. Citizenship & Immigration

Services, *Updated Guidance for the Referral of Cases and Issuance of Notices to Appear (NTAs)*

*in Cases Involving Inadmissible Deportable Aliens,* p. 7 (June 28, 2018), attached hereto as Ex.

7.[10]

73.     Plaintiffs, already traumatized children, reasonably relied on the requirements in

the SIJS Statute in petitioning the federal government for humanitarian relief.  In return,

Defendants' unlawful and arbitrary imposition of a new SIJS requirement punishes Plaintiffs for

their petitions and leaves them in far worse situations than if they had never petitioned for relief.

Plaintiffs brought themselves to the attention of the federal government.  Indeed, the information

provided in the SIJS petitions is the very information the government needs to initiate removal

proceedings against Plaintiffs – proceedings which belie state court findings, subject these

children to further emotional trauma, and deny them the opportunity to remain in the care or

custody of loving caregivers and to apply for lawful permanent residency.

## CLASS ACTION ALLEGATIONS

74.     Plaintiffs bring this action on behalf of themselves and all others who are similarly

situated pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(2).  A class action is proper

because this action involves questions of law and facts common to the classes, the class is so

numerous pursuant to Federal Rule of Civil Procedure 23(a)(1) that joinder of all members is

impractical, Plaintiffs' claims are typical of the claims of the class, Plaintiffs will fairly and

---

[10] Moreover, beginning September 11, 2018, USCIS adjudicators can deny SIJS petitions for lack of initial evidence *without* first giving children an opportunity to respond to Requests for Evidence or NOIDs.  *See generally* USCIS Policy Memorandum, *Issuance of Certain RFEs and NOIDs; Revisions to* Adjudicator's Field Manual (AFM) *Chapter 10.5(a), Chapter 10.5(b)* (July 13, 2018), attached hereto as Ex. 8.

COMPLAINT FOR DECLARATORY AND
                                                          INJUNCTIVE RELIEF

1    adequately protect the interests of the respective class, and Defendants have acted on grounds that

2    apply generally to the class, so that final injunctive relief or corresponding declaratory relief is

3    appropriate with respect to the class as a whole.  Like all class members, the class representatives

4    of the Proposed Class were adjudged to be dependent children of the court under California

5    Welfare and Institutions Code § 300 before reaching the age of 18; remained under the

6    jurisdiction of the juvenile court after attaining the age of 18; received SIJ Findings pursuant to

7    California Civil Procedure § 155; and have been denied or will be denied SIJS based on USCIS's

8    erroneous requirement that a state court have the authority to return a child to the custody of his

9    or her parent in order for that court to make the requisite SIJ Findings.

10         75.    Plaintiffs seek to represent the following class:  California children who have been

11   declared dependent on a juvenile court under Section 300 of the California Welfare and

12   Institutions Code and who have received or will receive denials of their SIJS petitions – either

13   explicitly or by a failure to adjudicate as required by law – on the grounds that the state court

14   cannot reunify them with their parents.

15         76.    The class meets the numerosity requirement of Federal Rule of Civil Procedure

16   23(a)(1).  On information and belief, the five Plaintiffs are a small subset of the non-minor

17   children in foster care or otherwise declared dependent on a juvenile court under Section 300 of

18   the California Welfare and Institutions Code who have received or will receive denials of their

19   SIJS petitions – either explicitly or by a failure to adjudicate as required by law – on the grounds

20   that the state court cannot reunify them with their parents.  These immigrant children are

21   dispersed throughout the state of California, such that joinder is impractical, and individual

22   actions by each of these immigrant children against the federal government is an economic

23   impossibility.

24         77.    The class meets the commonality requirement of Federal Rule of Civil Procedure

25   23(a)(2).  The members of the class are subject to denial or revocation of SIJS relief based on the

26   government's arbitrary and ad hoc imposition of a requirement not supported by law on all SIJS

27   applicants who have been declared dependent on a juvenile court.  The lawsuit raises numerous

28   questions of law common to members of the Proposed Class, including whether the government's

action in imposing an additional requirement for SIJS relief and denying SIJS based on the new

requirement violates class members' due process rights, whether the practice violates the INA or

the Constitution, whether the government's action is arbitrary and capricious under the APA, and

whether the action violated the APA's rule making requirements.  As the Court presiding over the

closely-related action described above wrote:

> [T]he instant action seeks to curb USCIS's adoption of a dubious legal theory to justify a blanket policy of denying SIJ petitions for immigrant juveniles between the ages of 18–20.  Specifically, Plaintiffs challenge USCIS's requirement that SIJ findings must be made by a state juvenile court with the power to actually reunify petitioners with their biological parents. ***Although USCIS's adoption of this legal theory may result in denials of SIJ status for specific SIJ petitions, it is USCIS's adoption of that theory, not the specific SIJ adjudications that may follow, that is at issue in this case.***

*J.L. v. Cissna*, 341 F. Supp. 3d 1049, 1066-67 (N.D. Cal. 2018) (emphasis added); *see also J.L. v.

Cissna*, No. 18-cv-04914, 2019 WL 415579, at *9 (N.D. Cal. Feb. 1, 2019) (quoting *Rodriquez v.

Hayes*, 591 F.3d 1105, 1123 (9th Cir. 2010)) ("The legal question 'at the heart of each class

member's claim for relief'—whether California probate courts must have the capacity to order

reunification with a parent—is common.").

78.     The proposed class meets the typicality requirement of Federal Rule of Civil

Procedure 23(a)(3) because the claims of the representative Plaintiffs are typical of the class.

Each of the class members has been denied or will be denied SIJS despite having met the

requirements under the law for relief.  Plaintiffs and the proposed class also share the same legal

claims, which assert the same substantive and procedural rights under the INA, the APA, and the

Due Process Clause.  *See J.L. v. Cissna*, No. 18-cv-04914, 2019 WL 415579, at *9 (typicality

requirement met when plaintiffs challenged "the reason for denial, not the denial itself").

79.     The Proposed Class meets the adequacy requirements of Federal Rule of Civil

Procedure 23(a)(4).  The representative Plaintiffs seek the same relief as the other members of the

class – namely, an order that the government cannot deny SIJS to children who have been

declared dependent on a juvenile court under Section 300 of the California Welfare where such a

denial is based on the (unlawful) requirement that the juvenile court must be able to reunify the

children with their parents, and approval of any wrongfully denied SIJS applications.  *J.L. v.*

1    *Cissna*, No. 18-cv-04914, 2019 WL 415579 at *10 (finding the named plaintiffs' interests aligned

2    when each named plaintiff and putative class member shared an interest in removing a hurdle to

3    SIJS, i.e. the *ultra vires* requirement that a California state have authority to reunify a petitioner

4    with his or her parents).

5           80.    The Proposed Class is represented by counsel from Milbank LLP and

6    Southwestern Law School.  Counsel have extensive experience litigating class action lawsuits and

7    other complex cases in federal court.

8           81.    The members of the class are readily ascertainable through Defendants' records.

9    *See* Decl. of Terri Robinson, *J.L. v. Cissna*, No. 5:18-CV-4914 (filed Nov. 30, 2018) (Dkt. No.

10   77-1), at 3 (government reviewed its records to identify cases).

11          82.    This action satisfies Federal Rule of Civil Procedure 23(b)(2) because USCIS's

12   imposition of the *ultra vires* requirement and its utilization thereof "appl[ies] generally to the

13   class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting

14   the class as a whole."  *See J.L. v. Cissna*, No. 18-cv-04914, 2019 WL 415579 at *11.

### CLAIMS FOR RELIEF

**COUNT ONE**

**VIOLATION OF THE IMMIGRATION AND NATIONALITY ACT AND THE**

**ADMINISTRATIVE PROCEDURE ACT, 5 U.S.C. § 701 ET SEQ.**

19          83.    Plaintiffs repeat and incorporate by reference each and every allegation contained

20   in the preceding paragraphs as if fully set forth herein.

21          84.    Defendants are subject to the Administrative Procedure Act.  *See* 5 U.S.C. § 703.

22          85.    The imposition of new SIJS requirements is final agency action subject to judicial

23   review because it marks the "consummation of the . . . decisionmaking process" and is one "from

24   which legal consequences will flow."  *Bennett v. Spear*, 520 U.S. 154, 178 (1997) (internal

25   quotation marks omitted).

26          86.    The APA requires that courts "shall . . . hold unlawful and set aside agency action,

27   findings, and conclusions found to be . . . not in accordance with law . . . [or] contrary to

28   constitutional right, power, privilege, or immunity."  5 U.S.C. § 706(2)(A), (B).

87.     The INA deems a child eligible for SIJS if he or she is (i) under 21 years of age; (ii) unmarried; (iii) declared dependent on a state juvenile court, or placed in the custody of a state agency or individual appointed by such a court (such as being placed in foster care); (iv) the subject of specific findings that reunification with one or both parents is not viable due to abuse, abandonment, neglect, or similar basis under state law; and (v) that it is not in the child's best interest to return to his or her home country.  *See* 8 U.S.C. §§ 1101(b)(1), 1101(a)(27)(J), and 1232(d)(6).

88.     Defendants violate INA § 101(a)(27)(J) by arbitrarily imposing requirements not found in the SIJS Statute and denying SIJS petitions for children who have been declared dependent on a state juvenile court pursuant to California Welfare and Institutions Code § 300.

89.     As set forth above, Defendants' unlawful imposition of extra-statutory requirements far exceeds their authority.  In the SIJS Statute, Congress recognized state courts' exclusive authority to make determinations about child welfare pursuant to state law.  By denying SIJS applications based on a new requirement not contemplated by the SIJS Statute or prior regulations, and by substituting their own decision-making for that of the California juvenile court, Defendants have acted in contravention of the plain language of the SIJS Statute and violated the APA.  Moreover, Defendants are misapplying this unlawful requirement based on the apparent misunderstanding that California juvenile courts do not have authority to reunify non-minor children with their parents, when the courts do in fact have that authority.

90.     Defendants' imposition of a new requirement harms Plaintiffs and class members.

91.     There are no other adequate available remedies.

## COUNT TWO

## ADMINISTRATIVE PROCEDURE ACT – ARBITRARY AND CAPRICIOUS ACTION

92.     Plaintiffs repeat and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

93.     Defendants are subject to the Administrative Procedure Act.  *See* 5 U.S.C. § 703.  Defendants further violate the APA by their arbitrary and capricious actions.  The official act of imposing requirements for SIJS eligibility is a final agency action subject to judicial review

1    because it marks the "consummation of the . . . decisionmaking process" and is one "from which

2    legal consequences will flow." *Bennett*, 520 U.S. at 178 (internal quotation marks omitted).

3        94.    The "comprehensive" scope of the APA provides a "default" "remed[y] for all

4    interactions between individuals and all federal agencies." *W. Radio Servs. Co. v. U.S. Forest*

5    *Serv.*, 578 F.3d 1116, 1123 (9th Cir. 2009).

6        95.    The APA requires that courts "shall . . . hold unlawful and set aside agency action,

7    findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or

8    otherwise not in accordance with law" or "without observance of procedure required by law."

9    5 U.S.C. § 706(2)(A), (D).

10        96.    The government's decision to break from years of consistent practice and change

11    the eligibility requirements for SIJS relief for children who otherwise meet the statutory

12    requirements violates the APA's prohibition against "arbitrary and capricious" agency action

13    because it is contrary to federal law, fails to defer to the state court's interpretation of its own

14    laws, exceeds the authority delegated to the agency by Congress, and imposes requirements not

15    contemplated by Congress.

16        97.    Moreover, the decision to impose additional requirements for a state court to issue

17    SIJ Findings is also arbitrary and capricious because the government previously determined that

18    state courts can issue the predicate findings for those over 18 years of age, and Defendants have

19    not provided a reasoned analysis for their departure from this determination.

20        98.    The agency's decision to impose insurmountable requirements for children seeking

21    SIJS who otherwise qualify for such relief under the clear language of the statute and its refusal

22    (for the first time) to defer to the California juvenile court's determination and exercise of its own

23    jurisdiction also violate the APA.  A decision based on a misinterpretation of clearly established

24    law is necessarily arbitrary and capricious, and it is particularly so here, where USCIS

25    circumvents the authority that Congress reserved for the state courts.

26        99.    Defendants' actions must also be set aside as arbitrary and capricious because

27    Defendants have not provided adequate reasons for the imposition of requirements outside the

28    statute.  This failure is unsurprising given that USCIS's actions clearly circumvent the SIJS

1   statute and cannot be adequately explained.

2       100.    Plaintiffs and hundreds of vulnerable children reasonably relied on the plain text of

3   the SIJS Statute and on Defendants' past adjudication of SIJS petitions by acknowledging that

4   they have been abused, abandoned, or neglected, and by bringing themselves into the purview of

5   the federal government.

6       101.    The government's blatant disregard for the reasonable reliance of Plaintiffs and

7   hundreds of other vulnerable children is the hallmark of arbitrary and capricious action and an

8   abuse of discretion, and the imposition of a new requirement for SIJS eligibility is in violation of

9   the APA and must be vacated.  *See Perez v. Mortg. Bankers Ass'n*, 135 S. Ct. 1199, 1209 (2015).

10      102.    Defendants' violation has caused Plaintiffs irreparable harm.

11                                  **COUNT THREE**

12  **ADMINISTRATIVE PROCEDURE ACT – NOTICE-AND-COMMENT RULEMAKING**

13      103.    Plaintiffs repeat and incorporate by reference each and every allegation contained

14  in the preceding paragraphs as if fully set forth herein.

15      104.    Defendants are subject to the Administrative Procedure Act.  *See* 5 U.S.C. § 703.

16  Defendants further violate the APA because the APA and 5 U.S.C. §§ 553 and 706(2)(D) require

17  that federal agencies conduct rulemaking before engaging in action that impacts substantive

18  rights.

19      105.    USCIS is an "agency" under the APA, and the implementation of new legal

20  guidance and resulting imposition of a new SIJS requirement and the actions that USCIS has

21  taken are "rules" under the APA.  *See* 5 U.S.C. § 551(1), (4).

22      106.    In implementing the new USCIS policy, the agency has changed the substantive

23  criteria necessary for obtaining SIJS relief.  Defendants did not follow the procedures required by

24  the APA before taking action impacting these substantive rights.

25      107.    With exceptions that are not applicable here, agency rules must go through notice-

26  and-comment rulemaking.  *See* 5 U.S.C. § 553.

27      108.    Defendants promulgated and implemented these rules without authority and

28  without notice-and-comment rulemaking, in violation of the APA.  Plaintiffs are impacted

1  because they have not had the opportunity to comment on the imposition of a new SIJS eligibility

2  requirement.

3      109.    Defendants' violation has caused ongoing harm to Plaintiffs and other vulnerable

4  children.

5  **COUNT FOUR**

6  **ADMINISTRATIVE PROCEDURE ACT – CONSTITUTIONAL VIOLATION**

7      110.    Plaintiffs repeat and incorporate by reference each and every allegation contained

8  in the preceding paragraphs as if fully set forth herein.

9      111.    Defendants are subject to the Administrative Procedure Act.  *See* 5 U.S.C. § 703.

10  The imposition of new SIJS requirements is final agency action subject to judicial review because

11  it marks the "consummation of the . . . decisionmaking process" and is one "from which legal

12  consequences will flow."  *Bennett*, 520 U.S. at 178 (internal quotation marks omitted).

13      112.    The "comprehensive" scope of the APA provides a "default" "remed[y] for all

14  interactions between individuals and all federal agencies."  *W. Radio Servs.*, 578 F.3d at 1123.

15      113.    The APA requires that courts "shall . . . hold unlawful and set aside agency action,

16  findings, and conclusions found to be . . . not in accordance with law . . . [or] contrary to

17  constitutional right, power, privilege, or immunity."  5 U.S.C. § 706(2)(A), (B).

18      114.    For the reasons set forth above, the government's fundamentally unfair and

19  arbitrary decision to add requirements to the SIJS statute and deny SIJS petitions for non-minor

20  dependents who obtained SIJS Findings on or after their 18th birthday, without proper notice and

21  justification after years of deferring to juvenile courts' assessments of their own jurisdictions,

22  violates the Due Process Clause and is unconstitutional, and therefore must be vacated.

23      115.    Defendants' constitutional violation has caused Plaintiffs irreparable harm.

24  **COUNT FIVE**

25  **DECLARATORY JUDGMENT THAT THE IMPOSITION OF A NEW SIJS**

26  **REQUIREMENT IS UNLAWFUL**

27      116.    Plaintiffs repeat and incorporate by reference each and every allegation contained

28  in the preceding paragraphs as if fully set forth herein.

117.    As set forth above, pursuant to the SIJS Statute and the intent of Congress, state courts issue predicate orders with specified findings related to child welfare and USCIS grants SIJS petitions based on the underlying state court determinations.  In 2017, USCIS inexplicably began denying SIJS petitions for children between the ages of 18 and 20 who obtained SIJS orders from California juvenile courts, finding that the state courts must have the authority and power to place the petitioner under the custody of a parent (and then applying that requirement based on a misunderstanding of California law).  Until this change, each of the Plaintiffs would have been found eligible for SIJS relief and protected from deportation.

118.    The Declaratory Judgment Act, 28 U.S.C. § 2201, allows this court, "[i]n a case of actual controversy within its jurisdiction," to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a).

119.    As SIJS-eligible children, Plaintiffs have an interest in the lawful adjudication of SIJS petitions.  The government's arbitrary decision to impose a new requirement for SIJS eligibility harmed Plaintiffs and continues to cause ongoing harm to Plaintiffs.

120.    There is an actual controversy regarding whether Defendants' imposition of a new requirement for SIJS eligibility and denial of SIJS petitions was lawful and is lawful today.

121.    Plaintiffs are entitled to a declaratory judgment pursuant to 28 U.S.C. § 2201(a) that the imposition of a new requirement for SIJS relief for children declared dependent on a juvenile court is unlawful.

**COUNT SIX**

**FIFTH AMENDMENT – DUE PROCESS**

122.    Plaintiffs repeat and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

123.    Immigrants who are physically present in the United States are guaranteed the protections of the Due Process Clause.  *See Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

124.    The Constitution "imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the

Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976).  A threshold inquiry in any case involving a violation of due process "is whether the plaintiffs have a protected property or liberty interest and, if so, the extent or scope of that interest."  *Nozzi v. Hous. Auth. of L.A.*, 806 F.3d 1178, 1190–91 (9th Cir. 2015) (citing *Bd. of Regents of State Colls. v. Roth,* 408 U.S. 564, 569–70 (1972)).

125.    The property interests protected by the Due Process Clause "extend beyond tangible property and include anything to which a plaintiff has a 'legitimate claim of entitlement.'"  *Nozzi*, 806 F.3d at 1191 (quoting *Roth*, 408 U.S. at 576–77).  "A legitimate claim of entitlement is created [by] . . . 'rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.'"  *Id*. (quoting *Roth*, 408 U.S. at 577).

126.    In addition to freedom from detention, *Zadvydas*, 533 U.S. at 690, the term "liberty" also encompasses the ability to work, raise a family, and "form the other enduring attachments of normal life."  *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972).

127.    Plaintiffs' and class members' compliance with the statutory and regulatory requirements established in 8 U.S.C. §§ 1101(b)(1), 1101(a)(27)(J), and 1232(d)(6) and in 8 C.F.R. § 204.11 vests in them a constitutionally protected property and liberty interest in obtaining SIJS relief and the numerous benefits that follow, including adjustment of status to lawful permanent resident.  These protected interests exist as a result of the eligibility requirement in the SIJS Statute and the government's repeated granting of petitions under California Welfare and Institutions Code § 300.  *See Goldberg v. Kelly*, 397 U.S. 254, 262 (1970); *Perry v. Sindermann*, 408 U.S. 593, 601 (1972) ("A person's interest in a benefit is a 'property' interest for due process purposes if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit and that he may invoke at a hearing.").

128.    As set forth above, Plaintiffs and children like them had a reasonable expectation of receiving SIJS once they met its well-defined and highly specific eligibility requirements, based on the language of the SIJS statute and the government's historical implementation of the statute.

129.    Defendants' failure to evaluate Plaintiffs' and class members' petitions in

COMPLAINT FOR DECLARATORY AND
                                                                                          INJUNCTIVE RELIEF

1    accordance with the SIJS statute and regulations violates the Due Process Clause.

2        130.    Moreover, Defendants' unlawful and arbitrary imposition of a new SIJS

3    requirement punishes Plaintiffs for their petitions and leaves already traumatized children in far

4    worse situations than if they had never petitioned for relief.  Plaintiffs brought themselves to the

5    attention of the federal government.  Indeed, the information provided in the SIJS petition is the

6    very information the government needs to initiate removal proceedings against Plaintiffs and

7    meet its burden of establishing their removability from the United States, returning them to

8    conditions of violence and neglect.  In fact, USCIS has recently issued a Memorandum indicating

9    that it will initiate removal proceedings against all individuals denied an affirmative immigration

10    benefit.

11        131.    Indeed, the government induced children to petition for SIJS relief only to change

12    the requirements once they had already applied and made themselves known to the federal

13    government.  The consequences to Plaintiffs and children like them are disastrous and life-

14    threatening.  The government's arbitrary imposition of a new requirement to SIJS eligibility

15    violates the due process rights of Plaintiffs and other otherwise-eligible SIJS applicants.

16        132.    The Due Process Clause also requires that the federal government's immigration

17    enforcement actions be fundamentally fair.  Here, the government's arbitrary decision to add

18    further requirements and deny SIJS petitions for children declared dependent on a juvenile court

19    after their 18th birthday, without proper notice and justification after years of deferring to juvenile

20    courts' assessment of their own jurisdiction, is fundamentally unfair to petitioners and in

21    contravention of the law.

22        133.    Defendants' due process violations have harmed Plaintiffs and will cause ongoing

23    harm to Plaintiffs.

24                        **PRAYER FOR RELIEF**

25        WHEREFORE, Plaintiffs pray that this Court grant the following relief:

26        1.    Permit this case to proceed as a class action and certify a class as defined when

27    requested by Plaintiffs in a motion for class certification;

28        2.    Declare that Defendants' denial of SIJS and imposition of a new requirement for

SIJS relief, which is contrary to state and federal law, violates the Administrative Procedure Act, Immigration and Nationality Act, and/or the Due Process Clause of the Fifth Amendment;

3.     Declare that the imposition of a new requirement for SIJS eligibility and resulting denials of Plaintiffs' and the putative class members' SIJS petitions by USCIS were arbitrary, capricious, and contrary to state and federal law;

4.     Declare that Defendants' application of the new requirement is itself erroneous because it is premised on the incorrect assumption that California juvenile courts do not have authority to reunify non-minor children with their parents, when the courts do in fact have that authority;

Enjoin Defendants from, permanently and preliminarily:

a.     Denying SIJS petitions – either explicitly or by a failure to adjudicate as required by law – on the grounds that a California juvenile court does not have jurisdiction or authority to "reunify" an 18- to 20-year-old with his or her parents;

b.     Initiating removal proceedings against or removing any SIJS petitioner who was declared dependent on a juvenile court and whose SIJS petition has been denied on the grounds that the California juvenile court did not have jurisdiction or authority to "reunify" an 18 to 20-year-old petitioner with his or her parents; and

c.     Providing less than 14 days' notice to Plaintiffs' counsel before Defendants take any adverse adjudicatory or enforcement action against any of the Plaintiffs or members of the Proposed Class during the pendency of this litigation;

5.     Rescind the improper denials of Plaintiffs' and class members' SIJS petitions, and order USCIS to reopen their petitions;

6.     Order USCIS to favorably adjudicate pending SIJS petitions whose adjudication has been delayed by USCIS's imposition of the erroneous requirement, where USCIS has no other basis to deny the petition; and

7.     Grant Plaintiffs reasonable attorneys' fees, costs, and other disbursements pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412; and

8.     Grant any other and further relief that this Court may deem just and proper.

1

2    Dated: September 27, 2019                By: */s/ Linda Dakin-Grimm*

3                                            **MILBANK LLP**

4                                            THOMAS R. KRELLER
                                             LINDA DAKIN-GRIMM
5                                            ANDREW B. LICHTENBERG

6                                            **SOUTHWESTERN LAW SCHOOL**
                                             ANDREA RAMOS
7
                                             *Attorneys for Plaintiffs*
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR DECLARATORY AND
                                                 INJUNCTIVE RELIEF