1    Thomas R. Kreller (CA 161922)
     TKreller@milbank.com
2    Linda Dakin-Grimm (CA 119630)
     LDakin-grimm@milbank.com
3    Andrew B. Lichtenberg (*pro hac vice*)
     ALichtenberg@milbank.com
4    MILBANK LLP
     2029 Century Park East, 33rd Fl.
5    Los Angeles, CA 90067
     Telephone:  424-386-4000
6    Facsimile:  213-892-4704
7
     Andrea Ramos (CA 162531)
8    aramos@swlaw.edu
     Clinical Professor of Law
9    Director of Immigration Law Clinic
     Southwestern Law School
10   3050 Wilshire Boulevard
     Los Angeles, CA 90010
11   Telephone:  213 738-7922
     Facsimile:  213 738-5751
12
     *Attorneys for Plaintiffs*
13

14

15                    **UNITED STATES DISTRICT COURT**

16              **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

17
     A.O., A.S.R., L.C., R.M., and I.Z.M., on behalf      Case No. 5:19-CV-06151-SVK
18   of themselves and all others similarly situated,

19                         Plaintiffs,                     **PLAINTIFFS' REPLY IN SUPPORT OF
                                                           MOTION FOR PRELIMINARY
20   v.                                                    INJUNCTION**

21   KENNETH T. CUCCINELLI, Acting Director,
22   U.S. Citizenship and Immigration Services,
     KEVIN K. MCALEENAN, Acting Secretary,                Date: December 20, 2019
23   U.S. Department of Homeland Security,
     ROBERT COWAN, Director, National Benefits
24   Center, U.S. Citizenship and Immigration            Date: TBD
     Services, UNITED STATES DEPARTMENT                   Time: TBD
25   OF HOMELAND SECURITY, and UNITED
     STATES CITIZENSHIP AND
26   IMMIGRATION SERVICES.                                Action Filed: September 27, 2019

27                         Defendants.

28

# <u>TABLE OF CONTENTS</u>

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.   PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS ......................... 2

    A.    Defendants Concede that Plaintiffs' SIJS Petitions Should Not Have
Been Denied Based on USCIS's *Ultra Vires* Requirement. ......................... 2

    B.    Plaintiffs' Denials Were Not Isolated Errors. .............................................. 3

    C.    Defendants' Offer Provides No Legal Right to Relief.................................. 7

    D.    USCIS's Change in Policy is a Final Agency Decision Subject to APA
Review.. ...................................................................................................... 9

    E.    USCIS's Reunification-Authority Requirement Was a Substantive
Rule Change................................................................................................ 9

III.  PLAINTIFFS SEEK APPROPRIATE INJUNCTIVE RELIEF........................... 10

IV.   AN INJUNCTION IS IN THE PUBLIC INTEREST .......................................... 12

V.    BALANCE OF HARDSHIP FAVORS THE PLAINTIFFS................................. 13

VI.   PLAINTIFFS WILL SUFFER IRREPARABLE HARM ABSENT AN
INJUNCTION .................................................................................................... 13

VII.  CONCLUSION................................................................................................... 14

REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

# TABLE OF AUTHORITIES

## CASES

*J.L. v. Cissna*,
  341 F. Supp. 3d 1048 (N.D. Cal. 2018) ........................................................1, 2, 6, 8, 10, 11, 13

*Kwai Fun Wong v. United States*,
  373 F.3d 952 (9th Cir. 2004) ..............................................................................................10

*Moreno Galvez v. Cuccinelli*,
  387 F. Supp. 3d 1208 (W.D. Wash. 2019)................................................................3, 10 11

*Ms. L, et al. v. ICE*,
  18-cv-0428 (S.D. Cal. September 4, 2019)...........................................................................11

*Nken v. Holder*,
  556 U.S. 418 (2009) ............................................................................................................13

*Nw. Immigrant Rights Project v. Sessions*,
  No. C17-716 RAJ, 2017 WL 3189032, (W.D. Wash. July 27, 2017), ...............................13

*R.F.M. v. Nielson*,
  365 F. Supp. 3d 350 (S.D.N.Y. 2019)..........................................................................3, 9, 10

*Reno v. Am.-Arab Anti-Discrimination Comm*,
  525 U.S. 471 (1999)............................................................................................................10

*Small v. Avanti Health Sys., LLC*,
  661 F.3d 1180 (9th Cir. 2011) ............................................................................................13

*W.A.O. v. Cuccinelli*,
  No. 19-cv-11696, 2019 WL 3549898 (D.N.J. July 3, 2019) ..............................................3, 11

## STATUTES

5 U.S.C. § 553............................................................................................................9, 10

8 U.S.C. § 1252(g) ..........................................................................................................10

Cal. Welf. & Inst. Code § 300 .....................................................................................7, 12

Cal. Welf. & Inst. Code § 303 .........................................................................................5

REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

1

## I.   INTRODUCTION

2         Defendants' opposition to Plaintiffs' preliminary injunction motion concedes that the *ultra*

3 *vires* reunification-authority requirement is and was an improper basis to deny SIJS applications of

4 Plaintiffs and members of the Proposed Class.[1]  Defendants assert that they have changed their

5 policy so SIJS will not be improperly denied to the Proposed Class going forward, and that the SIJS

6 applications already improperly denied will be readjudicated in the course of implementing the

7 settlement agreement in *J.L. v. Cissna*, 218-cv-4914 (N.D. Cal.).  In essence, Defendants ask the

8 Court to trust that no preliminary injunction is necessary because Defendants have purportedly

9 withdrawn the *ultra vires* requirement and represent that they will readjudicate erroneously-denied

10 SIJS petitions.  But neither the purported withdrawal of the *ultra vires* requirement nor Defendants'

11 representation that they will readjudicate improperly-denied petitions creates any enforceable rights

12 for the Proposed Class, and Defendants' unenforceable promises do not moot this action or obviate

13 the need for injunctive relief.

14         Defendants' promises should not be credited to the detriment of the Proposed Class where

15 Defendants have refused to stipulate to the preliminary relief requested in this case and have not

16 lived up to their commitments in similar cases.  For example, this week Defendants were ordered by

17 Judge Cousins to show cause why they should not be held in contempt in *J.L.* for violating the

18 preliminary injunction in that case by allowing the removal of class members (*i.e.*, children) from the

19 United States.  There is no reason to believe Defendants would comply with their unenforceable

20 representations here when they did not comply with a court order in *J.L.* regarding a similar class.

21 The preliminary injunction should be granted because if Defendants act as they say they will, the

22 injunction will impose absolutely no hardship on them, but if Defendants do not, the injunction will

23 protect vulnerable children from consequences that Defendants acknowledge are unlawful.

24         Defendants mischaracterize the facts in an effort to support their untenable arguments in

25 opposition.  Defendants argue that the *ultra vires* policy never applied to Plaintiffs, but the

26 documentary evidence provided by Plaintiffs in support of the motion proves that it did.  Defendants

27

28 [1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in Plaintiffs' Motion for Preliminary Injunction.

1    argue that USCIS's purported withdrawal of the *ultra vires* requirement protects the class, but the

2    USCIS press release regarding the purported policy change expressly stated that it "d[id] not create

3    legally binding rights," and, in any event, the purported change does nothing to rectify the harm to

4    Plaintiffs whose SIJS petitions were denied under the *ultra vires* policy.  Defendants argue that the

5    already-denied petitions will be readjudicated in implementing the settlement in *J.L v. Cissna*, but

6    that settlement clearly excludes the Proposed Class here—it creates no rights or obligations with

7    respect to the Proposed Class.

8           Finally, Defendants do not meaningfully respond to the majority of Plaintiffs' allegations

9    regarding irreparable harm or provide any evidence of meaningful countervailing interests that

10   would tip the scales in Defendants' favor with respect to the public interest and balance of the

11   hardships analysis.  For these reasons, this Court should enter the relief requested by Plaintiffs.

12   **II.    PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS**

13          **A.    Defendants Concede that Plaintiffs' SIJS Petitions Should Not Have Been**

14               **Denied Based on USCIS's *Ultra Vires* Requirement**

15          In support of their motion for preliminary injunction, Plaintiffs argued that Defendants'

16   imposition of a new SIJS eligibility requirement—requiring the state court issuing SIJS Findings to

17   have authority to return a child to the custody of his or her parent—contravenes federal law, is

18   arbitrary and capricious final agency action that violates the APA, and violates Plaintiffs' due

19   process rights.  *See* Mot. For Prelim. Inj., ECF 10 ("Mot.").  In their opposition, Defendants do not

20   respond to the majority of Plaintiffs' legal arguments.  In fact, Defendants concede that it was

21   inappropriate to deny Plaintiffs' SIJS petitions on the ground that the California juvenile court did

22   not have the authority to reunify Plaintiffs with their parents.  *See* Opp. to Mot. For Prelim. Inj., ECF

23   31 at 7 ("Opp.") ("[T]he issuance of a denial or notice of intent to deny on reunification authority

24   grounds to individuals with orders from the juvenile dependency proceedings should not have

25   occurred.").

26          Defendants' lack of meaningful response to Plaintiffs' legal arguments is not surprising given

27   that several courts have previously issued injunctions in favor of individuals who are similarly

28   situated to Plaintiffs here and who brought substantially similar claims.  In *J.L. v. Cissna*, the court

1    found that plaintiffs whose SIJS Findings were issued by a California probate court were likely to

2    succeed on the merits of the same APA causes of action that Plaintiffs assert here.  341 F. Supp. 3d

3    1048, 1058-68 (N.D. Cal. 2018) (Cousins, M.J.);  *see also Moreno Galvez v. Cuccinelli*, 387 F.

4    Supp. 3d 1208, 1218 (W.D. Wash. 2019) ("Because plaintiffs are likely to succeed on the merits of

5    their claims that the government's new [reunification-authority] policy is inconsistent with federal

6    law, arbitrary and capricious, and procedurally defective, the balance of hardships and public interest

7    factors weigh in favor of a preliminary injunction."); *W.A.O. v. Cuccinelli*, No. 19-cv-11696, 2019

8    WL 3549898, at *3 (D.N.J. July 3, 2019) ("USCIS shall not, until further Order of this Court, delay,

9    deny, or revoke SIJS petitions on the ground that the Family Part lacks jurisdiction to make SIJ

10   Findings as to juveniles who are between 18 and 21 years old.").  Similarly, in *R.F.M. v. Nielsen*—a

11   litigation brought by plaintiffs whose SIJS Findings were made by the New York Family Court—the

12   court found that the reunification-authority policy violated the APA.  365 F. Supp. 3d 350, 383

13   (S.D.N.Y. 2019) (Koetl, J.).

14          What is surprising, however, is that even in light of the chorus of court decisions rejecting the

15   reunification-authority requirement as *ultra vires*, Defendants continue to resist a commitment to

16   make the entire universe of affected children whole.  Instead, Defendants maintain in their

17   opposition that Plaintiffs' negative adjudications—which were expressly based on lack-of-

18   reunification-authority grounds—were merely "individual errors on the part of the adjudicators

19   concerning the continuing jurisdiction of the California courts in juvenile dependency proceedings."

20   Opp. at 3.  This is not credible, as discussed below.

21          **B.     Plaintiffs' Denials Were Not Isolated Errors**

22          Defendants' principal legal argument in their opposition is that Plaintiffs' denials were not

23   the result of an *ultra vires* policy but rather were isolated, individual mistakes.  This contention is

24   not sound.  First, as demonstrated by the documentation attached to Plaintiffs' declarations filed with

25   their preliminary injunction motion, USCIS used identical language when issuing NOIDs and

26   denials to Plaintiffs:

27          •    "While you have presented evidence that a court has found you dependent on

28               the court, the evidence you submitted does not establish that the state court

-3-

1  had jurisdiction under state law to make a legal conclusion about returning

2  you to your parent(s)' custody." A.S.R. Decl., Ex. C, ECF 12-2 at 14 (Notice

3  of Intent to Deny).

4  • "While you have presented evidence that a court has found you dependent on

5  the court, the evidence you submitted does not establish that the state court

6  had jurisdiction under state law to make a legal conclusion about returning

7  you to your parent(s)' custody." L.C. Decl., Ex. D, ECF 12-3 at 23 (Notice of

8  Intent to Deny).

9  • "While you have presented evidence that a court has found you dependent on

10  the court, the evidence you submitted does not establish that the state court

11  had jurisdiction under state law to make a legal conclusion about returning

12  you to your parent(s)' custody." L.C. Decl., Ex. C, ECF 12-3 at 15 (Denial).

13  • "While you have presented evidence that a court has found you dependent on

14  the court, the evidence you submitted does not establish that the state court

15  had jurisdiction under state law to make a legal conclusion about returning

16  you to your parent(s)' custody." R.M. Decl., Ex. E, ECF 12-4 at 42 (Notice of

17  Intent to Deny).

18  • "While you have presented evidence that a court has found you dependent on

19  the court, the evidence you submitted does not establish that the state court

20  had jurisdiction under state law to make a legal conclusion about returning

21  you to your parent(s)' custody." R.M. Decl., Ex. D, ECF 12-4 at 36 (Denial).

22  • "While you have presented evidence that a court has found you dependent on

23  the court, the evidence you submitted does not establish that the state court

24  had jurisdiction under state law to make a legal conclusion about returning

25  you to your parent(s)' custody." I.Z.M. Decl., Ex. D, ECF 12-5 at 21 (Notice

26  of Intent to Deny).

27  • "While you have presented evidence that a court has found you dependent on

28  the court, the evidence you submitted does not establish that the state court

-4-

1   had jurisdiction under state law to make a legal conclusion about returning

2   you to your parent(s)' custody."  I.Z.M. Decl., Ex. C, ECF 12-5 at 13

3   (Denial).

4   Moreover, upon receiving NOIDs based on the reunification-authority requirement, Plaintiffs

5   R.M., I.Z.M., and L.C. submitted substantive responses showing that they satisfied the continuing

6   jurisdiction requirement.  *See* L.C. Decl., Ex. E, ECF 12-3 ("California statutes, including California

7   Welfare and Institutions Code[] §303, establish that Juvenile Courts in California, including the

8   Dependency Court, may maintain jurisdiction over a youth until the age of 21."); I.Z.M. Decl., Ex.

9   E, ECF 12-5 (same); R.M Decl., Ex. F, ECF 12-4 ("Under California law, the juvenile court may

10   maintain dependency over a child who has turned 18 but is not yet 21 years old. Cal. Welf. & Inst.

11   Code §303.").  Despite Plaintiffs' specific articulation of USCIS's error with respect to the

12   reunification authority of California dependency courts, USCIS nonetheless denied the applications.

13   *See* L.C. Decl., Ex. C, ECF 12-3 ("the evidence you submitted does not establish that the state court

14   had jurisdiction under state law to make a legal conclusion about returning you to your

15   parent(s)'custody"); I.Z.M. Decl., Ex. C, ECF 12-5 (same); R.M Decl., Ex. D, ECF 12-4 (same).

16   Contrary to Defendants' position here, Plaintiffs were consistently denied SIJS benefits because of

17   the *ultra vires* requirement.  The denials were intentional, not isolated mistakes.

18   Additionally, Plaintiffs submitted declarations from individuals with extensive SIJS

19   experience who attested to the change in USCIS policy for non-minor dependent youth in California.

20   Andrea Ramos, an attorney and law professor who has worked with immigrant children and SIJS

21   applicants for over 20 years (and is also co-counsel for Plaintiffs), attested to the fact that USCIS

22   routinely approved SIJS for non-minor dependents between the ages 18 to 20 until USCIS

23   implemented its *ultra vires* reunification-authority policy in 2017.  See Ramos Decl. ¶¶ 9-10.

24   Similarly, Jeanette Hernandez, a Lead Legalization Worker with the Special Immigrant Status Unit

25   of the Los Angeles County Department of Children and Family Services with 25 years of experience

26   attested on information and belief that prior to 2017, "USCIS had not denied a single SIJS petition

27   from a petitioner aged 18 to 20 on the grounds that a juvenile court lacked authority to reunify a

28   child with her parent."  Hernandez Decl. ¶ 10.

Defendants' claim that the reunification-authority requirement never applied to Plaintiffs and the Proposed Class is further undermined by USCIS's own actions in response to the *J.L.* injunction. The court's decision on the motion for preliminary injunction in *J.L.* found that the reunification-authority policy was contrary to law and ordered Defendants to refrain from "denying [SIJS] . . . on the ground that a ***California Probate Court*** does not have jurisdiction or authority to 'reunify' an 18- to 20-year-old immigrant with his or her parents." *J.L. v. Cissna*, 341 F. Supp. 3d at 1071 (emphasis added).  As Defendants highlight in their opposition, however, USCIS thereafter responded to the *J.L.* decision by putting a hold on adjudications of SIJS petitions for "***all cases*** where the child was over 18 when they filed their petition ***regardless of the type of court order***."  Declaration of Rose Kendrick,  ECF 32 at ¶ 18 ("Kendrick Decl."); *see also* Opp. at 7.  The fact that USCIS felt it was necessary to broaden the purported hold to encompass SIJS applicants with findings from courts other than the California Probate Court is telling as to the true scope of USCIS's reunification-authority requirement.

To support Defendants' claim that the reunification-authority requirement never applied to Plaintiffs and the Proposed Class, Defendants submit a declaration from Rose Kendrick, the Assistant Associate Director of Division 1, Field Operations Directorate for USCIS.  Kendrick's declaration directs the Court to two training materials used to instruct adjudicators during 2018 and 2019, which Defendants rely on as evidence that the reunification-authority requirement does not apply to SIJS applicants with findings from a juvenile dependency court.  Kendrick Decl. ¶ 10; Opp. at 2.  The first training is dated December 2018 and was presented to SIJS adjudicators on December 11-13, 2018; the second is dated November 2019.  *Id.* ¶ 10-12.  These training materials were drafted and presented after Plaintiffs in this case received their negative adjudications (and after the *J.L.* injunction was issued).  *See* ECF No. 1 ¶¶ 19 (A.S.R. received an NOID on September 20, 2018), 21 (L.C. received an NOID on July 25, 2018 and a denial on September 12, 2018), 22 (R.M. received an NOID on June 28, 2018 and a denial on August 16, 2018), 23 (I.Z.M. received an NOID on August 9, 2019 and a denial on September 27, 2018).  The materials submitted by Defendants do not provide any evidence as to what training and guidance adjudicators received between mid-2017 and

1   October 25, 2018.  Children whose SIJS petitions were improperly denied in 2017 and 2018 are at

2   continuing risk of improper removal from the United States.

3   Moreover, neither presentation indicates that the reunification-authority requirement never

4   applied to Plaintiffs and the Proposed Class.  The December 2018 presentation discusses continuing

5   jurisdiction of state courts in the child welfare/foster care services context generally but does not

6   comment on the interaction between this requirement and the reunification-authority requirement

7   (which it expressly endorses).  ECF 32-1 at 26.  The November 2019 presentation discusses

8   California Welfare and Institutions Code Section 300 as it relates to the required dependency

9   finding, but this finding, as discussed above, was not at issue in the NOID and denials received by

10   Plaintiffs here.  ECF 32-2 at 47.  These citations do not support Defendants' argument that the

11   reunification-authority requirement was not applied to Plaintiffs and the Proposed Class.[2]

12   **C.   Defendants' Offer Provides No Legal Right to Relief**

13   Defendants argue that injuries already caused to Plaintiffs and the Proposed Class will be

14   remedied by the settlement of the *J.L.* action.  *See* Opp. at 3-4.  Defendants propose that "[i]f

15   plaintiffs provide their identifying information, USCIS could confirm that they are in fact on the J.L.

16   Class List, and thus already covered by the preliminary injunction and settlement in that case."  Opp.

17   at 4.  Defendants further assert that "[t]he J.L. settlement will require, inter alia, re-adjudication

18   within 30 days of the effective date of the settlement all previously denied I-360 SIJ petitions from

19   individuals on the Class List and re-adjudication within 90 days of the effective date of the

20   settlement all I-360 SIJ petitions from individuals on the Class List who had been issued notices of

21   intent to deny."  *Id.*

22

23

24   [2] Even if the Court were to find that it is a close question whether Plaintiffs' adjudications were the result of the *ultra vires* reunification-authority policy (which it should not, as discussed above), the Court should issue an injunction because even where "neither party has shown a *likelihood* of

25   success on the merits but only a serious question on the merits, in order to obtain a preliminary injunction, the moving party must show that it is likely to suffer irreparable injury in the absence of

26   preliminary injunctive relief, that the balance of hardships tips *sharply* in its favor, and that an injunction is in the public interest."  *IMC Inv. Grp. FE Winery, LLC v. Fairwinds Estate, LLC*, No.

27   16-CV-01134-JSW, 2016 WL 8997521, at *4 (N.D. Cal. May 2, 2016).  As demonstrated herein, Plaintiffs easily meet this alternative standard.

28

1      Defendants mischaracterize the *J.L.* settlement agreement and the nature of the purported

2  incidental relief it may afford Plaintiffs.  The *J.L.* settlement agreement requires Defendants to

3  "reopen and readjudicate the SIJ petitions for all possible **Class Members** identified on the Class List

4  who previously received a denial of their SIJ petition or a revocation of their SIJ classification"

5  within 30 days of the effective date of the settlement, and to "adjudicate the SIJ petitions for all

6  possible **Class Members** identified on the Class List who were in removal proceedings or who had

7  received final removal orders as of October 16, 2019" within 60 days of the effective date of the

8  settlement.  *See* Settlement Agreement, *J.L. v. Cissna*, 218-cv-4914 (N.D. Cal.), ECF No. 211-2, Ex.

9  A  (hereinafter "*J.L.* Settlement Agreement.") *and* Order Granting Final Approval of the Settlement

10  Agreement, ECF No. 222 (emphases added).  As alleged in Plaintiffs' complaint, *see* ECF No. 1 ¶ 1,

11  Plaintiffs and the Proposed Class here are not members of the *J.L.* class, which is defined as

12  "[c]hildren who have received or will receive guardianship orders pursuant to *California Probate*

13  *Code § 1510.1(a)* and who have received or will receive denials of their SIJ status petitions on the

14  grounds that the state court that issued the SIJS Findings lacked jurisdiction because the court did

15  not have the authority to reunify the children with their parents."  *J.L.* Settlement Agreement at 2.

16  Thus, while Plaintiffs hope that Defendants will readjudicate their SIJS petitions if their (or

17  Proposed Class members) files are reviewed as part of the *J.L.* settlement, it is not clear from the *J.L.*

18  settlement agreement that such review will occur, nor does the *J.L.* settlement provide any

19  entitlement to relief for the Proposed Class if USCIS fails to identify or correct such errors.  While

20  Plaintiffs appreciate Defendants' offer to re-review improper denials that Plaintiffs identify for them,

21  there is simply too much at stake for Plaintiffs to agree to give up their claims without legal

22  protection.

23      Further, the fact that USCIS claims to have withdrawn its *ultra vires* policy does not provide

24  any legal assurance for Plaintiffs and the Proposed Class that their SIJS applications will be correctly

25  re-adjudicated, even if they were to be re-reviewed at this juncture.  As an initial matter, Defendants

26  rely on a footnote in an AAO decision and one sentence in a press release as evidence of USCIS's

27  purported change in policy.  *See* Def. Opp. Br. at 1-2; *see also Matter of D-Y-S-C-*, Adopted

28  Decision 2019-02, at n.4 (AAO Oct. 11, 2019); October 15, 2019 USCIS press release, ECF 31-1.

-8-

1   The press release that Defendants cite states that the "adopted AAO decisions do not create legally

2   binding rights."  October 15, 2019 USCIS press release, ECF 31-1.  Plaintiffs are not aware of any

3   readjudicated SIJS petitions, more than two months after the announcement of the purported policy

4   change.  Moreover, Defendants argue (albeit unconvincingly) that the reunification-authority policy

5   was never applied to Plaintiffs.  If true, it is hard to understand Defendants' argument that the

6   revocation of a policy that was never applied to Plaintiffs would provide any relief to Plaintiffs.

7   **D.     USCIS's Change in Policy is a Final Agency Decision Subject to APA Review**

8            As discussed above, USCIS had a policy of denying SIJS petitions based on the *ultra vires*

9   requirement that state courts must have the authority to reunify a petitioner with his or her parents.

10  This change in policy is a final agency decision subject to APA review.  *See J.L.*, 341 F. Supp. 3d at

11  1068 (holding that USCIS's new reunification-authority requirement was final agency action

12  appropriate for judicial review); *R.F.M.*, 365 F. Supp. 3d 350, 376 (S.D.N.Y.) (same).  Until mid-

13  2017, USCIS routinely recognized the jurisdiction of California juvenile courts to make SIJS

14  Findings for applicants ages 18 to 20.  *See* Hern. Decl. ¶ 10 (describing that prior to 2017, USCIS

15  consistently granted SIJS to California petitioners aged 18 to 20); Ramos Decl. ¶ 10 (same).  In mid-

16  2017, USCIS changed its approach, issuing requests for evidence and NOIDs based on the

17  contention that California juvenile courts lacked authority to reunify a child with her parent.  Hern.

18  Decl. ¶ 10.  USCIS's purported decision to withdraw the reunification-authority requirement does

19  not change the improper denials already issued that, absent legal action by this Court, will not be re-

20  reviewed and could result in removal.  Further, USCIS's decision to revoke the policy is not

21  binding—as clearly stated in USCIS's press release announcing the decision—and does not prevent

22  the government from reinstating the *ultra vires* requirement.

23  **E.     USCIS's Reunification-Authority Requirement Was a Substantive Rule Change**

24           Plaintiffs are likely to succeed on their claim that USCIS's imposition of a reunification-

25  authority requirement was a substantive rule change subject to 5 U.S.C. § 553's notice and comment

26  procedures.  *See J.L.*, 341 F. Supp. 3d at 1065-66 (finding that USCIS's actions reinforced the

27  conclusion that its reunification-authority requirement was a mandatory substantive rule).

28  Defendants assert that USCIS's reunification-authority requirement was an interpretative rule.  This

-9-

1    is a gross mischaracterization of both the reunification-authority policy and its effect.  Plaintiffs have

2    demonstrated that USCIS repeatedly applied the reunification-authority requirement and refused to

3    recognize SIJS Findings from California juvenile courts for children ages 18 to 20.  *See* ECF No. 1

4    ¶ 19-23.  This is sufficient to demonstrate the binding nature of the policy as applied to Plaintiffs.

5    *See R.F.M.*, 365 F. Supp. 3d at 382 ("Indeed, the agency has demonstrated the binding nature of the

6    policy by consistently denying SIJ applications to petitioners over the age of eighteen in New York

7    on the basis of the new policy."); *see also Moreno Galvez*, 387 F. Supp. 3d at 1217 (W.D. Wash.

8    2019) ("Because the new policy creates a binding norm and compels agency adjudicators to

9    withhold consent to SIJ status whenever the state court lacked the power to order reunification, it has

10   substantial effect and is subject to the notice and comment rule making process under 5 U.S.C.

11   § 553.").

12   **III.    PLAINTIFFS SEEK APPROPRIATE INJUNCTIVE RELIEF**

13          Defendants incorrectly state that certain of Plaintiffs' requested injunctive relief relating to

14   removal is not legally available.  *See* Def. Opp. Br. at 11, ECF 31.  Defendants' argument oversteps

15   the scope of 8 U.S.C. § 1252(g).  Section 1252(g) provides that "no court shall have jurisdiction to

16   hear any cause or claim by or on behalf of any alien arising from the decision or action by the

17   Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any

18   alien."  The Supreme Court and the Ninth Circuit interpret § 1252(g) narrowly.  *See Reno v. Am.-*

19   *Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999); *Kwai Fun Wong v. United States*, 373

20   F.3d 952, 963-64 (9th Cir. 2004).  Section 1252(g) "applies only to three discrete actions that the

21   Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or

22   *execute* removal orders.'"  *Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471 at 482.  It "does not

23   bar review of the actions that occurred *prior* to any decision to 'commence proceedings'. . . or to

24   execute the removal order," which is precisely what this case involves.  *Kwai Fun Wong*, 373 F.3d at

25   965.

26          Courts routinely temporarily enjoin DHS from pursuing removal—as Plaintiffs request

27   here—while the merits of the agency's underlying actions are under review.  *See, e.g., J.L.*, 341 F.

28   Supp. 3d at 1071 (enjoining Defendants "from initiating removal proceedings against or removing

1  any [SIJS] petitioner who was appointed a guardian pursuant to § 1510.1(a) of the California Probate

2  Code and whose [SIJS] petition has been denied" on the grounds that the Probate Court lacked

3  reunification authority); *Moreno Galvez*, 387 F. Supp. 3d at 1219 (enjoining DHS and USCIS from

4  "initiating removal proceedings against or removing any [SIJS] petitioner whose [SIJS] petition

5  ha[d] been denied on the grounds that the Washington State court did not have [reunification

6  authority]"); *W.A.O. v. Cuccinelli*, 2019 WL 3549898, at *4 (D.N.J. July 3, 2019) (requiring

7  defendants to provide plaintiffs' counsel and the court with 45 days' notice before USCIS takes "any

8  adverse adjudicatory action in response to any 18+ SIJS petition" and 45 days' notice before ICE

9  executes a removal order against any individual "who filed an 18+ SIJS petition").

10         Indeed, recent events in the *J.L.* litigation underscore why the court must issue an injunction.

11  On December 13, 2019, the parties notified the *J.L.* court that Immigration and Customs

12  Enforcement actually removed three *J.L.* class members from the country despite the preliminary

13  injunction in that case, and did so without complying with the 14-day notice required under the

14  injunction.  *See* Joint Notice of Removals, *J.L. v. Cissna*, 18-cv-4914 (N.D. Cal.), ECF No. 223.  On

15  December 16, 2019 (this past Monday), Judge Cousins issued an Order to Show Cause Why

16  Defendants Should Not be Held in Civil Contempt.  *J.L. v. Cissna*, 18-cv-4914 (N.D. Cal.), ECF No.

17  224.  The issue is still pending.  This is not the first time in recent history that the Government has

18  taken action to remove immigrants from the United States in violation of a court order.  *See* Order

19  Granting in Part and Denying in Part Plaintiffs' Motion to Allow Parents Deported Without Their

20  Children to Travel to the United States, *Ms. L, et al. v. ICE*, 18-cv-0428 (S.D. Cal. September 4,

21  2019) (Sabraw, J.) (acknowledging that some Plaintiff-parents "were removed from the United

22  States without their children, and without being given the opportunity to elect or waive reunification

23  in accordance with the [June 26, 2018] preliminary injunction.").  Defendants cannot credibly argue

24  that a preliminary injunction is unwarranted because they should be taken at their word regarding

25  readjudication and removal when court orders have, to date, been insufficient to protect class

26  members in similar cases.

27

28

1   **IV.    AN INJUNCTION IS IN THE PUBLIC INTEREST**

2          Contrary to Defendants' claims that the "impact [of the reunification-authority requirement]

3   on Plaintiffs was transitory," s*ee* Opp. at 11, Plaintiffs have endured hardships as a result of SIJS

4   denials and NOIDs and continue to suffer as a result of USCIS's *ultra vires* policy.  Defendants'

5   opposition drastically understates the negative effects of Plaintiffs not receiving their SIJS benefits,

6   including lack of access to education or professional preparation as well as causing or exacerbating

7   mental health issues.  *See, e.g.*, R.M. Decl., Ex. F, ECF 12-4 ("I am also scared that I will not be able

8   to afford to go to nursing school or medical school, and I will not be able to get jobs as a nurse or

9   doctor") *and* L.C. Decl., Ex. E, ECF 12-3 ("When my case worker notified me of the SIJS denial, I

10  lost all hope … I no longer feel protected and safe").  Moreover, SIJS is designed specifically for

11  youth who have already experienced trauma and are therefore particularly vulnerable.

12         Defendants argue that granting the preliminary injunction will "divert resources from the

13  agency's mission."  Opp. at 11.  This is inconsistent with Defendants' position throughout the rest of

14  their brief.  Defendants claim that no preliminary injunction is necessary because no further harm

15  will befall the Proposed Class as a result of the *ultra vires* requirement.  If Defendants actually

16  intended to offer their promised relief to Plaintiffs, Defendants would already be complying with

17  two of Plaintiffs' three specific requests for relief—*i.e.*, they would not:

18         (1) "deny[] SIJS petitions on the grounds that a California juvenile court does not have

19         jurisdiction or authority to 'reunify' an 18 to 20 year old with his or her parents"; or

20         (2) "initiat[e] removal proceedings against or remov[e] any SIJS petitioner who has been

21         declared dependent on a juvenile court under Section 300 of the California Welfare and

22         Institutions Code and whose SIJS petition has been denied on the grounds that the California

23         juvenile court did not have jurisdiction or authority to 'reunify' an 18 to 20 year old

24         petitioner with his or her parents."

25  Mot. Prelim. Inj. ECF 10 at 32 and Proposed Order ECF 10-1 at 2.  In light of Defendants' position,

26  they should have stipulated to this relief already.  Because they refuse to stipulate to the relief, the

27  Court should hold them to their word by granting the relief.

28

1    The remaining relief sought—a 14-day notice of removal—was ordered by Judge Cousins in

2    *J.L.* and likewise should be ordered here.  It is in the public interest that this vulnerable population

3    be protected, *see Nw. Immigrant Rights Project v. Sessions*, No. C17-716 RAJ, 2017 WL 3189032,

4    at *6 (W.D. Wash. July 27, 2017), and that the SIJS statute be applied correctly, *see Small v. Avanti

5    Health Sys., LLC*, 661 F.3d 1180, 1197 (9th Cir. 2011) ("[T]he public interest favors applying

6    federal law correctly.").  Defendants have not offered meaningful evidence of countervailing

7    interests.

8    **V.     BALANCE OF HARDSHIP FAVORS THE PLAINTIFFS**

9    For similar reasons, the balance of the hardships here also favors an injunction.  *See Nken v.*

10   *Holder*, 556 U.S. 418, 435 (2009) (in an immigration-based action against the Government, the

11   public interest and balance of hardship inquiries tend to be viewed as one).  Defendants assert that

12   because Plaintiffs do not allege any named Plaintiffs are in removal proceedings, "[t]here is no

13   evidence that plaintiffs are in need any longer of the protections sought in the preliminary

14   injunction."  Opp. at 12.  But Plaintiffs have brought this action on behalf of all similarly situated

15   children in California, and Proposed Class members' individual circumstances will vary.

16   Furthermore, as discussed above, Plaintiffs currently have no legal protection whatsoever against

17   such action.  Indeed, even the injunction in *J.L.* preventing removal of class members without 14-

18   days notice has been insufficient to protect those children.  *See* Joint Notice of Removals, *J.L. v.*

19   *Cissna*, 18-cv-4914 (N.D. Cal.), ECF No. 223.  Thus, Defendants' position that an injunction in the

20   instant action "would serve no apparent purpose" is not credible.  Opp. at 12.  As noted above, if

21   Defendants act as they say they will, the injunction will impose absolutely no hardship on them, but

22   if Defendants do not, the injunction will protect and provide a remedy to vulnerable children from

23   consequences that Defendants acknowledge are unlawful.

24   **VI.    PLAINTIFFS WILL SUFFER IRREPARABLE HARM ABSENT AN INJUNCTION**

25   Defendants assert that Plaintiffs cannot show likelihood of irreparable harm "[g]iven that the

26   requirement is no longer in use."  Opp. at 5.  For the reasons discussed above, the purported change

27   in policy is not sufficient to protect Plaintiffs from irreparable harm as a result of Defendants'

28   unlawful actions.

-13-

1    In challenging the Proposed Class' need for relief, Defendants focus only on deportation.

2    Opp. at 6.  As discussed above, Defendants have not shown that Plaintiffs are not at risk of removal

3    in connection with the *ultra vires* policy.  Moreover, this is not the only harm facing Plaintiffs.  As

4    discussed in Plaintiffs' motion for preliminary injunction, Plaintiffs and the Proposed Class also

5    suffer from, and will continue to suffer from, other irreparable harm such as ineligibility for green

6    cards and accompanying benefits, and severe emotional harm that is exacerbated by the fact that

7    these children have already experienced significant trauma in their lives.  Mot. at 22-23.

8    Defendants' failure to address these harms favors a finding of irreparable harm in Plaintiffs' favor.

9    **VII.    CONCLUSION**

10    For the foregoing reasons, pending adjudication on the merits, this Court should grant the

11    requested relief.

12

13    Dated: December 20, 2019                          Respectfully submitted,

14                                                                  By: /s/    *Linda Dakin-Grimm*

15

16                                                                  MILBANK LLP
                                                                       THOMAS R. KRELLER
17                                                                  LINDA DAKIN-GRIMM
                                                                       ANDREW B. LICHTENBERG
18
                                                                       SOUTHWESTERN LAW SCHOOL
19                                                                  ANDREA RAMOS

20
                                                                       *Attorneys for Plaintiffs*
21

22

23

24

25

26

27

28

REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION