1

2

3

4                          UNITED STATES DISTRICT COURT

5                        NORTHERN DISTRICT OF CALIFORNIA

6

7    A. O., et al.,                              Case No.  19-cv-06151-SVK

8                    Plaintiffs,

9         v.                                     **ORDER GRANTING PLAINTIFFS'**
                                                 **MOTION FOR PRELIMINARY**
10   KENNETH T. CUCCINELLI, et al.,              **INJUNCTION**

11                   Defendants.                 Re: Dkt. No. 11

12          Plaintiffs A.O., A.S.R., L.C., R.M., and I.Z.M. (collectively, "Plaintiffs"), on behalf of

13   themselves and all other similarly-situated individuals (the "proposed class"), move for a

14   preliminary injunction against Defendants United States Citizenship and Immigration Services

15   ("USCIS"); Kenneth T. Cuccinelli, Acting Director of USCIS; Robert M. Cowan, Director of the

16   USCIS National Benefits Center; United States Department of Homeland Security ("DHS"); and

17   Kevin K. McAleenan, Acting Secretary of DHS (collectively, "Defendants").  Dkt. 10.  Plaintiffs

18   contend that Defendants adopted a new and unlawful policy (the "reunification authority

19   requirement") that resulted in the denials of Special Immigrant Juvenile ("SIJ") petitions.  *Id.*

20   Plaintiffs seek a preliminary injunction enjoining the application of the reunification authority

21   requirement.  *Id.*; Dkt. 10-1.

22          All parties have consented to the jurisdiction of the undersigned magistrate judge.  Dkts. 9,

23   24.  The Court held a hearing in this matter on April 7, 2020.  *See* Dkt. 66.  Based on the briefs,

24   arguments at the hearing, and the relevant law, the Court grants Plaintiffs' motion for the reasons

25   set forth below.

26   ////

27   ////

28   ////

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

# I.     BACKGROUND

## A.  Special Immigrant Juvenile Status

In 1990, Congress created the SIJ rule in an attempt to alleviate "hardships experienced by some dependents of United States juvenile courts by providing qualified aliens with the opportunity to apply for special immigrant classification and lawful permanent resident status, with possibility of becoming citizens of the United States in the future."  Special Immigrant Status, 58 Fed. Reg. 42843-01 (Aug. 12, 1993) (codified at 8 C.F.R. pts. 101, 103, 204, 205, 245). At its inception, "special immigrant status" was available to an immigrant who: (1) was under 21 years old; (2) was unmarried; (3) "ha[d] been declared a dependent on a juvenile court located in the United States in accordance with state law governing such declarations of dependency;" (4) ha[d] been deemed eligible by the juvenile court for long-term foster care; (5)"continue[d] to be dependent upon the juvenile court and eligible for long-term foster care; and (6) "ha[d] been the subject of judicial proceedings or administrative proceedings authorized or recognized by the juvenile court in which it has been determined that it would not be in the alien's best interest to be returned to the country of nationality or last habitual residence of the beneficiary or his or her parent or parents."  Id.

In 1993, the Immigration and Naturalization Service ("INS") adopted implementing regulations.  8 C.F.R. § 101.6(a) (1993).  One such regulation defined the term "juvenile court" as "a court located in the United States having jurisdiction under state law to make judicial determinations about the custody and care of juveniles."  Id.  Another regulation stated that whether an immigrant qualified as a "juvenile" depended on "the law of the state in which the juvenile court upon which the alien has been declared dependent is located."  8 C.F.R. § 101.6(c)(1) (1993).

In 2008, Congress passed the William Wilberforce Trafficking Victims Protection Reauthorization Act ("TVPRA"), which removed the requirement that the juvenile be deemed eligible for long-term foster care and replaced it with the requirement that a state juvenile court find that "reunification with 1 or both of the immigrant's parents is not viable due to abuse, neglect, or abandonment, or a similar basis found under State law."  William Wilberforce

1   Trafficking Victims Protection Reauthorization Act Of 2008, Pub. L. No. 110-457, 122 Stat. 5044,

2   5080 (2008).  The TVPRA also added that SIJ status would not be denied to anyone on the basis

3   of age so long as the child was under the age of 21 at the time the SIJ petition was filed.  *Id.*

4         Under the current SIJ statute, applicants must be: (1) under 21 years of age; (2) unmarried;

5   (3) "declared dependent on a juvenile court located in the United States or whom such a court has

6   legally committed to, or placed under the custody of, an agency or department of a State, or an

7   individual or entity appointed by a State or juvenile court located in the United States;" (4) receive

8   a finding that "reunification with 1 or both of the immigrant's parents is not viable due to abuse,

9   neglect, abandonment, or a similar basis found under State law;" and (5) receive a determination

10  "in administrative or judicial proceedings that it would not be in the alien's best interest to be

11  returned to the alien's or parent's previous country of nationality or country of last habitual

12  residence."  *See* 8 U.S.C. §§ 1101(b)(1), 1101(a)(27)(J).  The applicant must complete a Form I-

13  360 SIJ petition, which requires a state court order that satisfies requirements (3), (4), and (5)

14  above.  In California, the applicant may provide such an order from a California juvenile court.

15                 **B.  California Law**

16        California juvenile courts have the authority "to make judicial determinations regarding the

17  custody and care of children within the meaning of the federal Immigration and Nationality Act (8

18  U.S.C. Sec. 1101 et seq. and 8 C.F.R. Sec. 204.11)."  Cal. Civ. Proc. Code § 155(a)(1).  These

19  juvenile courts include the juvenile, probate, and family divisions of the California Superior Court.

20  *Id.*  Section 303(a) of the California Welfare and Institutions Code provides that such courts "may

21  retain jurisdiction over any person who is found to be a ward or a dependent child of the juvenile

22  court until the ward or dependent child attains 21 years of age."  These courts also make factual

23  determinations as to whether a child has been abused, neglected, or abandoned, and, if such a

24  determination is made, the court may adjudge that child to be a dependent child of the juvenile

25  court.  Cal. Welf. & Inst. Code § 300.

26  ////

27  ////

28  ///

United States District Court
Northern District of California

United States District Court
Northern District of California

1

### C.  Named Plaintiffs

2       Plaintiff A.O. is a 20-year-old French national who was born in Morocco and raised in

3   France.  Dkt. 12-2 ("A.O. Decl.") ¶ 6.  A.O. was abused and abandoned by both of his parents.  *Id.*

4   Plaintiff A.S.R. is a 21-year-old from Mexico who was neglected and abandoned by both of her

5   parents.  Dkt. 12-2 ("A.S.R. Decl.") ¶ 2.  Plaintiff L.C. is a 21-year-old from Mexico who was

6   neglected by both of her parents.  Dkt. 12-3 ("L.C. Decl.") ¶¶ 2, 14.  Plaintiff R.M. is a 21-year-

7   old from Mexico who was abused and neglected by both of his parents.  Dkt. 12-4 ("R.M. Decl.")

8   ¶¶ 2, 4.  Plaintiff I.Z.M. is a 21-year-old from Guatemala who was abandoned by her father.  Dkt.

9   12-5 ("I.Z.M. Decl.") ¶¶ 2, 12.

10      Between 2015 and 2018, each Plaintiff was declared dependent on a California juvenile

11  court pursuant to Section 300 of the California Welfare and Institutions Code and received a

12  determination from the juvenile court that: (1) reunification with either one or both parents was

13  not viable due to abuse, neglect, or abandonment and (2) it was not in the child's best interest to

14  return to their country of nationality or last habitual residence.  A.O. Decl. ¶ 3, Exhibit A; A.S.R.

15  Decl. ¶ 3, Exhibit A; L.C. Decl. ¶ 4; Exhibit A; R.M. Decl. ¶ 4, Exhibit A; I.Z.M Decl. ¶ 3, Exhibit

16  A.  After receiving these orders from the juvenile court, each Plaintiff applied for SIJ status.  A.O.

17  Decl. ¶ 4, Exhibits B, C; A.S.R. Decl. ¶ 4, Exhibit B; L.C. Decl. ¶ 5; Exhibit B; R.M. Decl. ¶ 5,

18  Exhibits B, C; I.Z.M Decl. ¶ 4, Exhibit B.  After sending A.S.R., L.C., R.M., and I.Z.M. at least

19  one, and sometimes multiple, "requests for evidence," USCIS eventually denied L.C.'s, R.M.'s

20  and I.Z.M.'s SIJ applications.  L.C. Decl. ¶ 6, Exhibit C; R.M. Decl. ¶ 6, Exhibit D; I.Z.M Decl. ¶

21  5, Exhibit C.  At the time this motion was filed, A.O.'s SIJ application was still pending and

22  A.S.R. had received a Notice of Intent to Deny.  A.O. Decl. ¶¶ 5, 8; A.S.R. Decl. ¶¶ 5, 13,

23  Exhibit C.

24      In L.C.'s, R.M.'s, and I.Z.M.'s denials, USCIS stated: "While you have presented evidence

25  that a court has found you dependent on the court, the evidence you submitted does not establish

26  that the state court had jurisdiction under state law to make a legal conclusion about returning you

27  to your parent(s)' custody."  L.C. Decl. Exhibit C; R.M. Decl. Exhibit D; I.Z.M Decl. Exhibit C.

28  A.S.R.'s Notice of Intent to Deny also included the same language.  A.S.R. Decl. Exhibit C.

4

1

### D.  Reunification Authority Requirement

Plaintiffs allege that during summer 2017, USCIS stopped adjudicating SIJ petitions.  Dkt. 1 ¶ 48.  Months later, in February 2018, USCIS allegedly issued new guidance stating that for a state court to find that reunification is not viable under the SIJ statue, the court must have the authority to return a child to the custody of his or her parent.  This guidance is now known as the "reunification authority requirement."  *Id*. ¶ 49.  After the new guidance was issued, USCIS began denying SIJ petitions and issuing Notices of Intent to Deny SIJ petitions based on the reunification authority requirement.  *Id*. ¶ 51; L.C. Decl. Exhibit C; R.M. Decl. Exhibit D; I.Z.M Decl. Exhibit C.  Plaintiffs maintain that their denials and notice of intent to deny were based on this reunification authority requirement.  *Id*.

On October 15, 2019, USCIS announced in a press release that it had abandoned the reunification authority requirement.  Dkt. 31 at 6; Dkt. 31-1.  The press release stated, in relevant part: "USCIS is no longer requiring evidence that a state court had the authority to place a petitioner in the custody of an unfit parent in order to make a qualifying determination regarding parental reunification for purposes of SIJ classification."  Dkt. 31-1 at 1.  The release also included a quote from Acting Director Cuccinelli:

> Through these clarifications, USCIS adjudicators will help ensure those who are victims and truly need protection from abuse, neglect, abandonment or a similar basis under state law receive the assistance they need. . . . These new clarifications will better protect deserving juvenile immigrants while also promoting program integrity and upholding our laws.  Congress needs to address loopholes in the SIJ program to better protect children.

Dkt. 31-1 at 1.  Additionally, the release indicated that USCIS had issued three Adopted Decisions from the Administrative Appeals Office ("AAO") clarifying the requirements for SIJ classification.  *Id*.  These Adopted Decisions were included as a hyperlink to the release.  *Id*. at 2.  The release also stated: "USCIS acknowledges the potential for reliance interests; however, these three adopted AAO decisions do not create legally binding rights or change substantive requirements.  They will go into effect on Oct. 15, 2019 and will apply to pending and future petitions."  *Id*. at 2.

The three Adopted Decisions, Matter of E-A-L-O; Matter of A-O-C; and Matter of D-Y-S-

1    C, are accompanied by Policy Memoranda that state: "This adopted decision establishes policy

2    guidance that applies to and shall be used to guide determinations by all U.S. Citizenship and

3    Immigration Services (USCIS) employees.  USCIS personnel are directed to follow the reasoning

4    in this decision in similar cases."  Adopted Decisions 2019-04, 2019-03, 2019-02.  Each

5    Memorandum also states:

6        This PM is intended solely for the guidance of USCIS personnel in the performance
         of their official duties.  It is not intended to, does not, and may not be relied upon to
7        create any right or benefit, substantive or procedural, enforceable at law or by any
         individual or other party in removal proceedings, in litigation with the United States,
8        or in any other form or matter.

9    *Id*.  Each Adopted Decision references the now-defunct reunification authority requirement in a

10   footnote.  *See* Adopted Decision 2019-04 at 3, fn. 1 ("Consistent with the district court's decision

11   in *R.F.M. v. Nielsen*, 365 F. Supp. 3d 350 (S.D.N.Y. Mar. 15, 2019) and section 101(a)(27)(J)(i) of

12   the Act, USCIS interprets the definition of juvenile court at 8 C.F.R. § 204.11(a) to mean a court

13   located in the United States having jurisdiction under state law to make judicial determinations

14   about the dependency and/or custody and care of juveniles"); 2019-03 at 4, fn. 2 (same); 2019-02

15   at 6, fn. 4 ("USCIS does not require that the juvenile court had jurisdiction to place the juvenile in

16   the custody of the unfit parent(s) in order to make a qualifying determination regarding viability of

17   parental unification.  *See R.F.M. v. Nielsen*, 365 F. Supp. 3d 350, 382 (SDNY Mar. 15, 2019);

18   *J.L., et al v. Cissna*, 341 F. Supp. 3d 1048 (N.D.C.A. 2018),  *Moreno-Galvez v. Cissna*, No. 19-

19   321 (W.D.W.A. July 17, 2019), and *W.A.O. v. Cissna*, No. 19-11696 (D.N.J. July 3, 2019))."

20           Plaintiffs filed suit against Defendants on September 27, 2019.  Dkt. 1.  On October 4,

21   2019, Plaintiffs filed the instant motion asking this Court to enjoin Defendants from: (1) denying

22   SIJ petitions on the grounds that a California juvenile court does not have jurisdiction or authority

23   to reunify an 18 to 20 year old with his or her parents; and (2) removing or initiating removal

24   proceedings against any SIJ petitioner who has been declared dependent on a juvenile court under

25   Section 300 of the California Welfare and Institutions Code and whose SIJ petition has been

26   denied on the grounds that the California juvenile court did not have jurisdiction or authority to

27   reunify an 18-to-20-year-old petitioner with his or her parents (the "reunification authority

28   requirement").  Dkt. 10 at 7; Dkt. 10-1.  Plaintiffs also ask this Court to order Defendants to

1   provide no less than fourteen days' notice to Plaintiffs' counsel before Defendants take any

2   adverse adjudicatory or enforcement action against any of the Plaintiffs or members of the

3   proposed class during the course of this litigation.  *Id.*

4       Defendants challenge Plaintiffs' need for a preliminary injunction on the basis of

5   mootness, the absence of a final agency action, and the lack of irreparable harm.  Dkts. 31, 53.

6   The parties also dispute the scope of a preliminary injunction.  Dkts. 53, 55, 66.

7       **II.    MOOTNESS**

8       Defendants contend that the instant litigation is moot because (1) USCIS voluntarily

9   abandoned the reunification authority requirement in October 2019 and (2) all proposed class

10  members' petitions will be adjudicated in the course of administrating a settlement in another case

11  from this District, *J.L. v. Lee Francis Cissna et al.*, 18-cv-04914-NC (filed Aug. 14, 2018).  Dkt.

12  31; Dkt. 53 at 3-4; Dkt. 66.  Plaintiffs dispute Defendants' assertion of mootness, arguing that (1)

13  the voluntary cessation doctrine to mootness applies and (2) the proposed class members are not

14  covered by the *J.L.* settlement agreement.  Dkt. 55 at 1; Dkt. 66.

15      **A.  Voluntary Cessation**

16      Defendants contend that their voluntary conduct – disposing of the reunification authority

17  requirement – renders the instant action moot.  "A case becomes moot . . . when the issues

18  presented are no longer live or the parties lack a legally cognizable interest in the outcome."  *Am.*

19  *Diabetes Ass'n v. United States Dep't of the Army*, 938 F.3d 1147, 1152 (9th Cir. 2019) (citing

20  *Rosebrock v. Mathis*, 745 F.3d 963, 971 (9th Cir. 2014)) (citations and internal quotation marks

21  omitted).  "It is well settled that a defendant's voluntary cessation of a challenged practice does

22  not deprive a federal court of its power to determine the legality of the practice."  *Friends of the*

23  *Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (citations omitted).  "In

24  accordance with this principle, the standard we have announced for determining whether a case

25  has been mooted by the defendant's voluntary conduct is stringent: A case might become moot if

26  subsequent events made it absolutely clear that the allegedly wrongful behavior could not

27  reasonably be expected to recur."  *Friends of the Earth, Inc.*, 528 U.S. at 189 (citations and

28  internal quotation marks omitted).  "The heavy burden of persua[ding] the court that the

7

challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness." *Id.* (citations and internal quotation marks omitted).

"[A] voluntary change in official stance or behavior moots an action . . . when it is 'absolutely clear' to the court, considering the 'procedural safeguards' insulating the new state of affairs from arbitrary reversal and the government's rationale for its changed practice(s), that the activity complained of will not reoccur." *Fikre v. Fed. Bureau of Investigation*, 904 F.3d 1033, 1039 (9th Cir. 2018) (citing *McCormack v. Herzog*, 788 F.3d 1017, 1025 (9th Cir. 2015); *Rosebrock*, 745 F.3d at 974). "A statutory change . . . is usually enough to render a case moot, even if the legislature possesses the power to reenact the statute after the lawsuit is dismissed." *Rosebrock*, 745 F.3d at 971 (citing *Chem. Producers & Distributors Ass'n v. Helliker*, 463 F.3d 871, 878 (9th Cir. 2006)). "By contrast, repeal or amendment of an ordinance by a local government or agency does not necessarily deprive a federal court of its power to determine the legality of the practice at issue, though it may do so in certain circumstances." *Id.* "[A] policy change not reflected in statutory changes or even in changes in ordinances or regulations will not necessarily render a case moot, but it may do so in certain circumstances." *Id.*

The Ninth Circuit has "not set forth a definitive test for determining whether a voluntary cessation of this last type—one not reflected in statutory changes or even in changes in ordinances or regulations—has rendered a case moot." *Rosebrock*, 745 F.3d at 972. It has, however, identified a series of evaluative factors, including whether:

> (1) the policy change is evidenced by language that is broad in scope and unequivocal in tone;
>
> (2) the policy change fully addresses all of the objectionable measures that [the Government] officials took against the plaintiffs in th[e] case;
>
> (3) th[e] case [in question] was the catalyst for the agency's adoption of the new policy;
>
> (4) the policy has been in place for a long time . . . ; and
>
> (5) since [the policy's] implementation[,] the agency's officials have not engaged in conduct similar to that challenged by the plaintiff[ ].

*Rosebrock*, 745 F.3d at 972 (alterations in original and internal quotation marks omitted). Immediately following the enumerated factors, the Court also stated that it would be "less inclined

8

United States District Court
Northern District of California

1   to find mootness where the new policy could be easily abandoned or altered in the future." *Id.*

2   (citing *Bell v. City of Boise*, 709 F.3d 890, 901 (9th Cir. 2013)) (internal quotation marks omitted).

3        Courts "presume that a government entity is acting in good faith when it changes its policy

4   . . . [but] when the Government asserts mootness based on such a change[,] it still must bear the

5   heavy burden of showing that the challenged conduct cannot reasonably be expected to start up

6   again." *American Diabetes Association*, 938 F.3d at 1152.  The Government "may do so by

7   persuading the court that the change in its behavior is 'entrenched' or 'permanent.'" *Fikre*, 904

8   F.3d at 1037 (quoting *McCormack*, 788 F.3d at 1025).

9        The first *Rosebrock* factor is whether the policy change is evidenced by language that is

10  "broad in scope and unequivocal in tone."  Defendants argue that three Adopted Decisions, Matter

11  of E-A-L-O; Matter of A-O-C; and Matter of D-Y-S-C (Adopted Decisions 2019-04, 2019-03,

12  2019-02), the press release (Dkt. 31-1), and the November 2019 version of the USCIS Policy

13  Manual (Dkt. 53 at 4, fn. 2) are clear, on point, and unequivocal about the rescission of the

14  reunification authority requirement.  Dkt. 66 at 29.  Defendants further argue that these documents

15  "make it absolutely clear to the important people, and that is the adjudicators, that you cannot

16  apply the reunification authority requirement." *Id.*  Plaintiffs contend that the rescission of the

17  reunification authority requirement is not broad in scope because the press release and the updated

18  Policy Manual only acknowledge the abandonment of the reunification authority requirement in a

19  single sentence. *Id.* at 9.  They note that none of the documents Defendants point to include

20  background or explanation for the change in the implementation of the reunification authority

21  requirement, nor do the documents include any acknowledgment that the reunification authority

22  requirement was unlawful in the first instance. *Id.*  Plaintiffs further contend that the release is not

23  unequivocal in tone because it includes statements regarding the continuing abuse of the SIJ

24  statute, which Plaintiffs argue appears as USCIS "somewhat begrudgingly" revoking the

25  reunification authority requirement. *Id.*

26        The Court does not find that rescission of the reunification authority requirement was

27  either broad in scope or unequivocal in tone.  None of the documents identified by Defendants

28  acknowledge why the reunification authority requirement was imposed in the first place or why it

9

was rescinded.  *See* Dkt. 31-1; Dkt. 53 at 4, fn. 2; Adopted Decisions 2019-04, 2019-03, 2019-02. There is no discussion of formalizing the renouncement of the reunification authority requirement in a rule-making or statutory change.  *See* Dkt. 31-1; Dkt. 53 at 4, fn. 2; Adopted Decisions 2019-04, 2019-03, 2019-02.  To the contrary (and particularly troubling to the Court), the language in the press release explicitly limits the scope of the rescission by making clear that the "three adopted AAO decisions do not create legally binding rights or change substantive requirements." Dkt. 31-1 at 2.  Indeed, in the press release, Acting Director Cuccinelli states that the reunification authority requirement is not contrary to federal law.  *Id.* at 1.  Defendants cannot claim the benefit of voluntary cessation on such a carefully crafted rescission.  Accordingly, this factor weighs heavily against a finding of mootness.

The second factor for the Court to examine is whether the policy change fully addresses all of the objectionable measures that the government officials took against the plaintiffs.  Defendants argue that the rescission of the reunification authority requirement fully addresses the objectionable conduct because that objectionable conduct (the reunification authority requirement) has been done away with.  Dkt. 66 at 29.  Plaintiffs argue that neither the press release nor the policy manual address individuals who have either already received denials or have pending requests for evidence or notices of intent to deny, so not *all* objectionable activity is corrected.  *Id.* at 12.

Plaintiffs' contention is well-taken.  The press release specifically states that the new policy will only apply to "pending and future petitions."  Dkt. 31-1 at 2.  Defendants' language cries out for an explanation of what constitutes "pending," yet not one of Defendants' documents—the Adopted Decisions, the November 2019 version of the USCIS Policy Manual, or the press release—define this essential term.  Dkt. 31-1; Dkt. 53 at 4, fn. 2; Adopted Decisions 2019-04, 2019-03, 2019-02.  As a result, it is unknown, and cannot be presumed, that the policy change addresses all of the objectionable conduct.  This factor, too, weighs against a finding of mootness.

The third *Rosebrock* factor is whether this case "was the catalyst for the agency's adoption of the new policy."  The Parties agree that this case was not the catalyst for the change in

guidance.  Dkt. 66 at 12, 29.  This factor also weighs against a mootness finding.

The fourth factor is whether the policy has been in place long enough such that it has become "entrenched."  Plaintiffs argue that the revocation of the reunification authority requirement is not entrenched because it was implemented a mere six months ago.  Dkt. 66 at 7. Additionally, they contend that it is not entrenched because the press release specifies that Adopted Decisions are not permanent changes and do not create legally binding rights.  *Id.* Plaintiffs note that as in *Fikre*, Defendants have not assured Plaintiffs that they will not impose the reunification authority requirement at some later point in time.  *Id.* at 15.  Defendants do not rebut Plaintiffs' arguments except to say that they will not reimpose the reunification authority requirement.  *Id.* at 33.  As Defendants have failed to meet their burden to show that rescission of the reunification authority requirement hast been sufficiently "entrenched," this factor, too, weighs against a finding of mootness.

The fifth and final *Rosebrock* factor is whether the agency's officials have not engaged in conduct similar to that challenged by the plaintiff since the imposition of the new policy. Defendants argue that there is no evidence that SIJ petitions have been denied on the basis of the reunification authority requirement since the press release was issued.  Dkt. 66 at 33.  They also argue that there is no evidence that USCIS will re-start the already-vacated reunification authority requirement.  *Id.*  Plaintiffs acknowledge that there is no evidence of SIJ petitions being denied because of reunification authority requirement.  *Id.* at 12.  However, they argue that because the reunification authority requirement was initially imposed "under the cover of darkness," USCIS could reinstate the reunification authority requirement at any time.  *Id.* at 12-13.

Of particular concern to the Court, as addressed at the hearing, is Defendants' position in its supplemental brief that the reunification authority requirement was a "***legal interpretation*** by USCIS for its adjudicators, interpreting Congress's requirement that a juvenile court make a determination as to the viability of reunification . . . ."  Dkt. 53 at 4, fn. 2 (emphasis added).  As every lawyer knows, a legal interpretation, or in this case a re-interpretation, backed neither by precedent nor passage of time is, by its very nature, subject to change depending upon the interests at hand.  It is difficult to conceive of a new policy that could be more easily abandoned or altered

1    in the future than one resting upon a recent legal re-interpretation.  This factor weighs against a

2    finding of mootness.[1]

3         For all of the foregoing reasons, Defendants have fallen short of meeting the "heavy

4    burden of showing that the challenged conduct cannot reasonably be expected to start up again."

5    *American Diabetes Association*, 938 F.3d at 1152.  Accordingly, Plaintiffs' claims are not moot.

6         **B.  Impact of *J.L.* Settlement**

7         Separate and apart from the rescission of the reunification authority requirement,

8    Defendants argue that the *J.L. v. Cissna* class list is overinclusive and subsumes the instant

9    proposed class such that all potential class members in this case will have their SIJ petitions

10   adjudicated during the course of the *J.L.* settlement, thereby rendering the instant case moot.  Dkt.

11   53 at 3, 5; Dkt. 66 at 21, 30-34.  Plaintiffs contend that the *J.L.* settlement agreement provides no

12   legal relief for the proposed class members because the *J.L.* agreement only applies to its class

13   *members*, not the overinclusive class *list*.  Dkt. 38 at 8-9; Dkt. 55 at 1-2, Dkt. 66 at 16-20.

14        The *J.L.* class is defined as: "Children who have received or will receive guardianship

15   orders pursuant to California Probate Code § 1510.1(a) and who have received or will receive

16   denials of their SIJ classification petitions on the grounds that the state court that issued the SIJ

17   Findings lacked jurisdiction because the court did not have the authority to reunify the children

18   with their parents . . . and who file their SIJ petitions by December 15, 2019."  Dkt. 31-5 at 5; *see*

19   *also* Settlement Agreement at 3, *J.L. v. Cissna*, 18-cv-4914-NC (N.D. Cal. Dec. 20, 2019), ECF

20   No. 211-2, Ex. A.  In contrast, the *J.L.* class list is defined as: "[T]he system-generated list, dated

21   October 1, 2019, of individuals who were between 18-and 21-years old on the date of filing of the

22   I-360 (SIJ petition) and included a California residence on their petition. The list of possible Class

23   Members may be both overinclusive and underinclusive."  Settlement Agreement at 3, *J.L. v.*

24   *Cissna*, 18-cv-4914-NC (N.D. Cal. Dec. 20, 2019), ECF No. 211-2, Ex. A.

25   

26   _____

27   [1] Later in this Order, the Court takes issue with Defendants' position that the reunification
     authority requirement was merely a change in interpretation.  *See infra* Part III.B.1.iii.  As
     explained above, it is Defendants' position that undermines the fifth *Rosebrock* factor, even
28   though the Court ultimately finds the position not well-taken.

United States District Court
Northern District of California

1    Plaintiffs argue that the substantive relief in the *J.L.* settlement agreement applies only to

2    *J.L.* class members and does not apply to non-class members who merely appear on the class list.

3    Dkt. 55 at 2 (citing Dkt. 31-2 at 4 ("The Settlement Agreement requires USCIS to adjudicate SIJ

4    petitions for Class Members in accordance with the [law and settlement terms]")).  Plaintiffs'

5    point is well-taken.  If removal proceedings were initiated against a proposed class member who

6    did not have an order from a California probate court, they would not be able to use the *J.L.*

7    settlement agreement to stop Defendants from taking action against them.  While it is admirable

8    that Defendants are willing to adjudicate the claims of the instant proposed class along with the

9    *J.L.* class, the central issue—that members of the instant proposed class lack a legally-enforceable

10   right—remains.  Accordingly, the Court finds that the instant action is not mooted by the *J.L.*

11   settlement agreement.  The Court turns next to the merits of Plaintiffs' motion.

12       **III.       PRELIMINARY INJUNCTION**

13           **A.  Legal Standard**

14       "In order to obtain a preliminary injunction a plaintiff must establish: (1) that he is likely to

15   succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary

16   relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public

17   interest." *Hernandez v. Sessions,* 872 F.3d 976, 989-90 (9th Cir. 2017) (quoting *Winter v. Nat.*

18   *Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)).  Under the Ninth Circuit's "sliding scale"

19   approach, "the elements of the preliminary injunction test are balanced, so that a stronger showing

20   of one element may offset a weaker showing of another."  *Hernandez*, 872 F.3d at 990 (quoting

21   *Pimentel v. Dreyfus*, 670 F.3d 1096, 1105 (9th Cir. 2012)) (citations omitted).  The law of this

22   Circuit also dictates that a plaintiff need only show "serious questions going to the merits" if the

23   "balance of hardships tips sharply in the plaintiff's favor, and the other two *Winter* factors are

24   satisfied." *Alliance for the Wild Rockies v. Pena*, 865 F.3d 1211, 1217 (9th Cir. 2017) (quoting

25   *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013)) (internal quotation

26   marks omitted).

27   ////

28   ////

United States District Court
Northern District of California

United States District Court
Northern District of California

### B.  Analysis

#### 1.  Likelihood of Success

Plaintiffs argue that they will succeed on the merits of their claims because the reunification authority requirement violates both the Administrative Procedures Act ("APA") and Fifth Amendment due process.[2]  *See* Dkts. 1, 10, 38.

A court examines final agency actions under the "arbitrary and capricious" standard prescribed by the APA.  5 U.S.C. § 702(2)(A); *Friends of Endangered Species v. Jantzen*, 760 F.2d 976, 980-81 (9th Cir. 1985).  The APA mandates that a court "shall" set aside any agency decision that it finds "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 702(2)(A).  To determine whether a policy is arbitrary and capricious, courts consider whether "the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise."  *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

Plaintiffs argue that the reunification authority requirement is arbitrary and capricious because: (1) it contravenes federal and state law; (2) Defendants failed to provide a reasoned explanation for the new requirement; and (3) Defendants failed to follow required notice and comment procedures.  Dkt. 10 at 10-17.  Defendants respond that: (1) there is no final agency action for this Court to review; and (2) the reunification authority requirement was merely a reinterpretation of existing policy and was not subject to notice and comment procedures.  Dkt. 31 at 12-14.

////

////

////

////

---

[2] Because the Court concludes that Plaintiffs are likely to succeed on their APA claims, it declines to address their Fifth Amendment Due Process claims at this time.

### i.    Contravenes Federal Law

Plaintiffs contend that the reunification authority requirement violates the SIJ statute by imposing an eligibility requirement that does not exist anywhere in the law.  Dkt. 10 at 11. Defendants do not dispute this argument.  *See* Dkt. 31.

The text of the SIJ statute requires the applicant to be "declared dependent on a juvenile court located in the United States . . ."  8 U.S.C. § 1101(a)(27)(J).  A "juvenile court" is defined as "a court located in the United States having jurisdiction under State law to make judicial determinations about the custody and care of juveniles."  8 C.F.R. § 204.11(a).  Included in this definition of juveniles are unmarried individuals under the age of 21.  *See* 8 C.F.R. § 204.11(c).

California law states that "[a] superior court has jurisdiction under California law to make judicial determinations regarding the custody and care of children within the meaning of the federal Immigration and Nationality Act (8 U.S.C. Sec. 1101 et seq. and 8 C.F.R. Sec. 204.11), which includes, but is not limited to, the juvenile, probate, and family court divisions of the superior court."  Cal. Civ. Proc. Code § 155(a)(1).  "These courts have jurisdiction to make the factual findings necessary to enable a child to petition the United States Citizenship and Immigration Services for classification as a special immigrant juvenile pursuant to Section 1101(a)(27)(J) of Title 8 of the United States Code."  *Id*.  Section 303(a) of the California Welfare and Institutions Code states that "[t]he court may retain jurisdiction over any person who is found to be a ward or a dependent child of the juvenile court until the ward or dependent child attains 21 years of age."  Cal. Welf. & Inst. Code § 303(a).

These authorities make clear that California juvenile courts have the jurisdiction to make SIJ findings.  As Plaintiffs point out, there is no indication in the federal authority that a state court must have the authority to order the reunification of a child and his parent in order to be recognized as an appropriate "juvenile court."  Dkt. 10 at 11.  Instead, the regulation merely states that the court have "jurisdiction under State law to make judicial determinations about the custody and care of juveniles."  8 C.F.R. § 204.11(a).  California law explicitly grants its juvenile courts with such jurisdiction.  Cal. Civ. Proc. Code § 155(a)(1).  Defendants do not refute any of these arguments.

15

In this case, as with the other similar cases across this country, the Court finds that USCIS's decision to impose the reunification authority requirement is inconsistent with the plain text of the SIJ statute. On this basis, Plaintiffs are likely to succeed on the merits of their claim that the new policy is "not in accordance with law" as required. 5 U.S.C. § 706(2)(A).

### ii.   No Reasoned Explanation

In this case, Plaintiffs also contend that the reunification authority requirement is arbitrary and capricious because USCIS failed to provide an adequate basis or reasoned explanation for its new requirement. Dkt. 10 at 14-16. The Supreme Court recently opined that "[t]he reasoned explanation requirement of administrative law . . . is meant to ensure that agencies offer genuine justifications for important decisions, reasons that can be scrutinized by courts and the interested public." *Dep't of Commerce v. New York*, 139 S.Ct. 2551, 2575-76 (2019). Thus, under the APA, an agency has a duty "to 'examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made.'" *ASSE Int'l, Inc. v. Pompeo*, No. 18-55979, 2020 WL 468874, at *1 (9th Cir. Jan. 29, 2020) (quoting *Motor Vehicle Mfrs. Ass'n of U.S.,* 463 U.S. at 43 (1983)).

Defendants have not responded to this argument, and the facts before the Court reveal no evidence that USCIS "examine[d] the relevant data" or "articulate[d] a satisfactory explanation for its action." *Motor Vehicle Mfrs. Ass'n of U.S.*, 463 U.S. at 43. Accordingly, the Court finds that Plaintiffs are likely to succeed on the merits of their claim that USCIS failed to provide a reasoned explanation for the reunification authority requirement.

### iii.   Absence of Notice and Comment Procedures

Plaintiffs also contend that the reunification authority requirement is procedurally defective under the APA because USCIS did not follow the requisite notice and comment procedures prescribed by 5 U.S.C. § 552(a)(1)(D). Dkt. 10 at 16-17. Defendants acknowledge that the APA requires notice and comment procedures before setting forth *substantive* rules but argues that such procedures do not apply to "interpretive rules, general statements of policy, or rules of agency organization, procedure, or practice." Dkt. 31 at 9 (citing 5 U.S.C. § 553(b)(A)). Defendants claim that the reunification authority requirement "was an attempt to clarify the meaning of the

United States District Court
Northern District of California

'reunification is not viable' language in the SIJ statute" and "was, at most, an interpretive rule" rather than a substantive rule change.  Dkt. 31 at 10.

Other courts have determined that the reunification authority requirement is a substantive rule change.  *See R.F.M. v. Nielsen*, 365 F. Supp. 3d 350, 382 (S.D.N.Y. 2019) ("The agency's new policy is binding in SIJ adjudications and therefore 'readily falls within the broad category of rules and interpretations encompassed by § 552(a)(1)(D);'" *J.L.*, 341 F. Supp. 3d at 1065.  Indeed, USCIS has demonstrated the binding nature of the reunification authority requirement by continually denying SIJ applications to individuals over the age of eighteen in California on the basis of the reunification authority requirement.  As the imposition of the reunification authority requirement was a substantive rule change under 5 U.S.C. § 552(a)(1)(D), USCIS was required to follow notice and comment procedures. Accordingly, the Court finds that Plaintiffs have shown a likelihood of success on their claim that USCIS was required to follow the APA's notice and comment procedures but failed to do so.

### iv.    Final Agency Action

Despite Plaintiffs' arguments, Defendants contend that there is no final, reviewable agency action for review under the APA.  Dkt. 31 at 8-9.  Defendants argue that though three Plaintiffs have received denials, those denials were the result of adjudicator error rather than agency policy.  *Id.*  Defendants contend that the Plaintiffs who received denials cannot establish that no further decision-making is expected because there may be further decision-making either through an AAO appeal or as part of the *J.L.* settlement.  *Id.*  Defendants further argue that because the two remaining Plaintiffs have not received denials, they, too, have no decisions ripe for APA review.  *Id.*  Plaintiffs contend that the reunification authority requirement was a final agency decision subject to review under the APA.  Dkt. 38 at 9.  This Court agrees with Plaintiffs.

Judicial review of agency actions is allowed "so long as the decision challenged represents a 'final agency action for which there is no other adequate remedy in a court.'"  *W. Radio Servs. Co. v. U.S. Forest Serv.*, 578 F.3d 1116, 1122 (9th Cir. 2009) (quoting *Webster v. Doe*, 486 U.S. 592, 599 (1988)).  "For an agency action to be final, the action must (1) mark the consummation of the agency's decisionmaking process and (2) be one by which rights or obligations have been

United States District Court
Northern District of California

1   determined, or from which legal consequences will flow." *Oregon Nat. Desert Ass'n v. U.S.*

2   *Forest Serv.*, 465 F.3d 977, 982 (9th Cir. 2006) (citing *Bennett v. Spear*, 520 U.S. 154, 177-78

3   (1997)) (internal quotation marks omitted).  "[T]he core question is whether the agency has

4   completed its decisionmaking process, and whether the result of that process is one that will

5   directly affect the parties." *Oregon Natural Desert Ass'n*, 465 F.3d at 982 (quoting *Indus.*

6   *Customers of Nw. Utilities v. Bonneville Power Admin.*, 408 F.3d 638, 646 (9th Cir. 2005))

7   (alteration in original and citations and internal quotations marks omitted).

8          Other courts have found the reunification authority requirement to be a final agency action

9   subject to review under the APA.  *See J.L.*, 341 F. Supp. 3d at 1067 ("Under the *Bennett* test,

10   USCIS's new policy is a reviewable final agency action"); *R.F.M.*, 365 F. Supp. 3d at 376 ("[B]oth

11   prongs of *Bennett* are satisfied, and the policy is reviewable under the APA.").  Defendants offer

12   no persuasive reasons for this Court to depart from a similar finding.  As a result, the Court finds

13   the USCIS's adoption of the reunification authority is final agency action that is appropriate for

14   judicial review.

15          Because Plaintiffs have demonstrated that they are likely to succeed on their APA claims,

16   the first *Winter* factor weighs heavily in favor of granting the preliminary injunction

17                              **2.  Irreparable Harm**

18          "Irreparable harm is traditionally defined as harm for which there is no adequate legal

19   remedy, such as an award of damages." *Arizona Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1068

20   (9th Cir. 2014) (citing *Rent-A-Ctr., Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d

21   597, 603 (9th Cir. 1991)).  "Because intangible injuries generally lack an adequate legal remedy,

22   intangible injuries [may] qualify as irreparable harm." *Arizona Dream Act Coalition*, 757 F.3d at

23   1068 (citing *Rent-A-Ctr.*, 944 F.2d at 603) (alteration in original).  "[L]osing eligibility for SIJ

24   status and the benefits that go along with that status" constitutes irreparable harm. *Moreno Galvez*

25   *v. Cuccinelli*, 387 F. Supp. 3d 1208, 1218 (W.D. Wash. 2019).  In addition, "loss of opportunity to

26   pursue [Plaintiffs'] chosen profession[s] constitutes irreparable harm." *Arizona Dream Act*

27   *Coalition*, 757 F.3d at 1068 (quoting *Enyart v. Nat'l Conference of Bar Examiners, Inc.*, 630 F.3d

28   1153, 1165 (9th Cir. 2011)) (alterations in original and internal quotation marks omitted).

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Plaintiffs have articulated ample reasons why they will suffer irreparable harm absent a

2    preliminary injunction.  Dkt. 10 at 20-24; Dkt. 38 at 13-14.  If USCIS is permitted to deny SIJ

3    petitions based on the reunification authority requirement, Plaintiffs argue that they will be

4    ineligible for green cards and other benefits afforded by SIJ status, such as federally funded

5    education, preferential status for employment-based green cards, and the like.  Dkt. 10 at 21.

6    Plaintiffs also contend that they will suffer irreparable harm because they will be subject to

7    removal from the United States, a country that they now consider to be their home.  *Id.* at 22-23.

8    Plaintiffs also describe feelings of fear and uncertainty arising from their denied or soon to be

9    denied SIJ petitions and the resulting removal proceedings.  *Id.* at 23-24.  "Such emotional and

10   psychological harms will not be remedied by an award of damages and are, therefore, irreparable."

11   *Moreno Galvez*, 387 F. Supp. 3d at 1218 (citing *Chalk v. U.S. Dist. Court Cent. Dist. of*

12   *California*, 840 F.2d 701, 709 (9th Cir. 1988)).

13   As with its mootness argument, Defendants argue that Plaintiffs do not face irreparable

14   harm because USCIS has disposed of the reunification authority requirement.  Dkt. 31 at 5-7.  The

15   Court has addressed this argument (*see supra* Part II.A) and is again unpersuaded.  Defendants

16   also contend that Plaintiffs face no harm because of the over inclusiveness of the *J.L.* class list.

17   Dkt. 31 at 6-7.  The Court has addressed this argument (*see supra* Part II.B) and does not find it

18   persuasive.  The Court is similarly unpersuaded by Defendants' argument that there is no

19   irreparable harm because no Plaintiffs are currently in removal proceedings.  Dkt. 31 at 6.

20   In conclusion, Plaintiffs have met their burden of showing that they will suffer irreparable

21   harm in the absence of a preliminary injunction.  This *Winter* factor weighs heavily in favor of

22   granting the preliminary injunction.

23                    **3.  Balance of Equities and Public Interest**

24   The balance of equities and public interest factor merge when the government is the

25   opposing party.  *California v. U.S. Dep't of Health & Human Servs.*, 941 F.3d 410, 431 (9th Cir.

26   2019) (citing *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014)).  "These

27   factors weigh in favor of a preliminary injunction when plaintiffs have also established that the

28   government's policy violates federal law."  *J.L.*, 341 F. Supp. 3d at 1070 (citing *Arizona Dream*

19

*Act Coalition*, 757 F.3d at 1069; *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013)).

Because Plaintiffs are likely to succeed on the merits of their claims that the reunification authority requirement violates federal law, is arbitrary and capricious, and is procedurally defective (*see supra* Part III.B.1), the third and fourth *Winter* factors also weigh in favor of a preliminary injunction. As all four *Winter* factors are satisfied, this Court finds that Plaintiffs are entitled to a preliminary injunction.

### C.  Scope of the Injunction

"Preliminary injunctive relief is generally limited to apply only to named plaintiffs where there is no class certification unless extending injunctive relief to an absent class is necessary to give prevailing parties the relief to which they are entitled." *J.L.*, 341 F. Supp. 3d at 1070 (quoting *Easyriders Freedom F.I.G.H.T. v. Hannigan*, 92 F.3d 1486, 1501-02 (9th Cir. 1996)) (emphasis, citations, and internal quotation marks omitted). Although a class has not yet been certified, statewide preliminary injunctive relief is necessary to preserve the status quo and to prevent irreparable harm for Plaintiffs and the proposed class. *J.L.*, 341 F. Supp. 3d at 1070 (citing *Price v. City of Stockton*, 390 F.3d 1105, 1117-18 (9th Cir. 2004); *Just Film, Inc. v. Merch. Servs., Inc.*, 474 F. App'x 493, 495 (9th Cir. 2012)). In the event that Plaintiffs are unable to justify certification of a class, the relief may be narrowed.

Regarding the scope of an injunction, Plaintiffs argue that a moratorium on the removal of any proposed class member regardless of whether removal is based on the reunification authority requirement is warranted because the reunification authority requirement is not itself a basis for removal. Dkt. 66 at 38-39. Plaintiffs argue that individuals who are granted SIJ status become exempt from various types of removal. *Id.* at 38. Plaintiffs also note that individuals are not removed from the United States because of their SIJ status—they are removed for being in the United States unlawfully. *Id*. at 38-39. Plaintiffs further argue that the laws pertaining to SIJ status are complex and that while SIJ status is being adjudicated, Plaintiffs and the proposed class should not be subject to removal. *Id*. at 39-40. Defendants argue that Plaintiffs or members of the proposed class may be subject to removal for other lawful reasons (*id*. at 33-34), and the Court

1  appreciates that point.  However, when balancing Plaintiffs' and the proposed class' threat of

2  irreparable harm with Defendants' concerns that lawful removal may be halted for a relatively

3  limited period of time no longer than the span of this litigation, the Court finds that the risk of

4  harm to Plaintiffs and the proposed class outweighs Defendants' concerns.

5      **IV.   CONCLUSION**

6      Plaintiffs' motion for a preliminary injunction is **GRANTED**.  During the pendency of this

7  action, all Defendants and their officers, agents, employees, representatives, and all persons acting

8  in concert or participating with them are **ENJOINED AND RESTRAINED:**

9      1.  From denying Special Immigrant Juvenile petitions on the grounds that a California

10         juvenile court does not have jurisdiction or authority to "reunify" an 18-to-20-year-old

11         with his or her parents; and

12      2.  From initiating removal proceedings against or removing any Special Immigrant

13         Juvenile petitioner who has been declared dependent on a juvenile court under Section

14         300 of the California Welfare and Institutions Code and whose Special Immigrant

15         Juvenile petition has been denied on the grounds that the California juvenile court did

16         not have jurisdiction or authority to "reunify" an 18 to 20-year-old petitioner with his

17         or her parents.

18      3.  Defendants must provide no less than fourteen (14) days' notice to Plaintiffs' counsel

19         before Defendants take any adverse adjudicatory or enforcement action against any of

20         the Plaintiffs or members of the proposed class during the pendency of this litigation.

21      Within **30 days** of this Order, the parties must file a joint Case Management Statement.

22  Additionally, Plaintiffs must move for class certification within **90 days** of this Order.

23      **SO ORDERED.**

24  Dated: May 1, 2020

25

26                         _Susan van Keulen_

27                         SUSAN VAN KEULEN
                           United States Magistrate Judge

28

United States District Court
Northern District of California

21